## THE EXPRESS.[1]

### MAYOR, ETC., OF CITY OF NEW YORK v. THE EXPRESS.

*(District Court, S. D. New York. November 9, 1891.)*

**1. COLLISION—VESSEL AT PIER—FOG-SIGNALS.**
   A vessel moored for the night, according to her custom, along-side a well-known dock, and not projecting beyond the wharf into the channel, and run into by a steamer passing in the fog, is not in fault because she had no lights set, and sounded no signals.

**2. SAME—NAVIGATION IN FOG—NARROW CHANNEL—SOUNDINGS.**
   The Express, going east, met a thick fog at night at Little Hell Gate, and continued her navigation in a narrow and winding channel, without using the lead, until she ran into the F. E., tied up, as usual, at a well-known pier on North Brothers' island. A fog-bell on the island, near the course of the Express, was rung frequently. *Held*, that the E. was solely to blame for the collision, it being her duty to use the lead.

In Admiralty. Suit to recover damages caused by collision.

*Wm. H. Clark*, Corp. Counsel, and *James M. Ward*, for libelant.
*Carpenter & Mosher*, for claimant.

BROWN, J. The libelant's steam-boat Franklin Edson, which for the past two years has been used in the service of the health department, under the provisions of law for the transportation of persons having contagious diseases, was in the habit of tying up at night on the southerly side of the pier extending from the northerly side of North Brothers island about 275 feet into the water towards the Port Morris shore. A sufficient depth of water had been obtained there by dredging, and towards evening on the 16th of February, 1891, the Edson returned to her usual mooring place along the southerly side of the dock, at about 5 o'clock P. M., and was there made fast, with her head towards the shore, and her stern a few feet inside of the outer end of the pier. At a little past 7 o'clock the steam propeller Express, loaded with 19 freight cars, and with a float attached to her port side loaded with 12 other freight cars, while making her way to the eastward on one of her regular trips from New York to Wilson's Point, near Norwalk, Conn., in a dense fog, ran up against the pier just ahead of where the Edson lay, and carried her float upon and into the Edson, causing the latter great damage, to recover which the above libel was filed. The Express was accustomed to make daily trips to Wilson's Point, leaving New York usually at about 6 o'clock P. M. When she started upon this trip the weather was smoky, but without indications of thick fog. On arriving near the mouth of Little Hell Gate, she ran suddenly into a bank of fog so thick that the spindle light on the Sunken Meadow could not be seen. She thereupon hauled a little to the southward, to avoid the shoals there, and afterwards, on hearing the bell and getting a glimmer of the light from North Brothers island, for a moment, nearly ahead,

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

she changed her course, so as to bring the light about two points on her starboard bow. She continued on that course slowly, and, as her pilot supposed, towards the main ship channel between the North Brothers island and the Port Morris shore, till the Edson was seen looming through the dense fog only 100 or 150 feet distant, — too late to enable the Express, by the immediate backing of her engines, to prevent collision.

There is no evidence on the part of the libelant disputing the evidence of the claimant that from the time the fog was encountered there was no suitable place either to anchor or to moor short of Port Morris, and I therefore assume that to be the fact. The evidence also shows that the engines and twin screws of the Express were worked slowly, under one bell only, with frequent stops; that the tide was ebb, and that the usual course of the Express against the ebb-tide was by the Port Morris channel, and not between the Two Brothers. The master states that he would have gone into the Port Morris dock if he had made it, but that he was not specially endeavoring to make the Port Morris shore. No lead was thrown by the Express, and no one was at the time of collision on board the Edson, nor were any signals given from her. The Express was sounding her fog-whistle, as required by law, at short intervals. The respondent contends that under such circumstances no blame is attributable to the Express, and that the Edson was in fault for not having persons on board to answer the fog-whistle of vessels approaching in the fog in a channel where navigation is difficult.

I cannot sustain the defense of inevitable accident, nor absolve the Express from blame. The master was familiar with the winding channel, the projecting pier, the habit of the Edson to moor along-side the pier at night, the course of the tides, and the position of the light and bell on North Brothers island. He was not in fact proposing to come to anchor or to moor as soon as possible, but to pursue his navigation through the fog. In choosing this alternative, he took the risk of injuring other vessels properly moored at the docks. I have little doubt that he ran upon this dock because he did not intend to make the Port Morris shore. In thick fog, where from any cause there is doubt as to one's position, the obligation to use the lead when practicable is well settled, (*The Montana*, 17 Fed. Rep. 377; *The City of Para*, 44 Fed. Rep. 689;) and, as the evidence showed, is often acted on in going around the North Brothers. It is urged that the use of the lead would have been impracticable, owing to the great depth of water, except so near the pier as to be of no use. But the course of the Express in reaching the point where she came up against the dock contradicts, as it seems to me, this contention. The master says that he did not change his helm after getting the North Brothers light two points on his starboard bow, so that the Express, in order to come up to the dock at nearly a right angle, as she did, must, for some time before, have been in the shoal water off the western side of the island, so that the lead, if used, would have apprised her of her position in ample time to have avoided this accident. It is not improbable that the master mistook the distance of the bell and light, and supposed the use of the lead unnecessary. The evidence of Joyce leaves

**no** doubt that the bell was rung very often, and was perfectly audible. I am not satisfied with the meager recognition of the bell that appears in the testimony in behalf of the Express. If not heard or noticed more than appears, there was neglect in attending to it.

I do not think the Edson is within the line of cases that require a light or fog-signals. In all the cases cited by the claimant, the anchored vessel held in fault for the lack of signals in a fog has not been a vessel moored at a dock at her usual place, but one lying at anchor in or near a fair way, where vessels were likely to pass, and were to be expected. It is impossible to say that any vessel, in navigating on either side of North Brothers, was to be expected to run up against the dock where the Edson lay. The Edson was not off the end of the dock, but on its side, and wholly within its exterior line, in a place where sufficient depth of water for her had been obtained only by means of dredging out the shoal bottom. As the Edson had no reason to expect any vessel there, she was under no more obligation to give signals to other vessels, or to keep persons on board of her for their benefit, than was the owner of the dock for the purpose of protecting his wharf.

Decree for the libelant, with order of reference to compute the damages.