## THE DELAWARE.

### THE AMBROSE SNOW.

(Circuit Court of Appeals, Second Circuit.   March 10, 1914.)

#### Nos. 198, 199.

COLLISION (§ 102*)—FOG—STEAM AND SAILING VESSELS MEETING—COMBINED FAULTS.

A collision in the main channel, entering New York Bay in a dense fog between a schooner-rigged pilot boat coming in and a steamship passing out, *held* due to the faults of both vessels in changing their courses after hearing each other's fog signals ahead; the steamship also being in fault for increasing her speed instead of stopping and navigating with caution, as required by article 16 of the Inland Rules, Act June 7, 1897, c. 4, 30 Stat. 96 (U. S. Comp. St. 1901, p. 2880).

[Ed. Note.—For other cases, see Collision, Dec. Dig. § 102.*

Signals of meeting vessels, see note to The New York, 30 C. C. A. 630.]

Appeals from the District Court of the United States for the Southern District of New York.

Suit in admiralty for collision by the New York Sandy Hook Pilots' Association and others, as owners of the pilot boat Ambrose Snow, against the steamship Delaware, the Clyde Steamship Company, claimant, with cross-libel.   Decree for cross-libelant, and libelant appeals.   Reversed.

For opinion below, see 204 Fed. 996.

Lindsay, Kalish & Palmer, of New York City (J. Culbert Palmer, of New York City, of counsel), for appellant.

Burlingham, Montgomery & Beecher, of New York City (Charles C. Burlingham and Chauncey I. Clark, both of New York City, of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge.   May 23, 1912, at a little before 7 p. m. the schooner-rigged pilot boat Ambrose Snow, having transferred her last pilot to the pilot boat Trenton near Scotland Lightship, proceeded on her way to her berth at Stapleton, Staten Island.   There was a thick fog, the wind light from S to E to E SE and the tide ebb.   The schooner went through the Swash into the Main Channel and proceeded slowly against the ebb tide on a course N by E along the westerly edge with her booms on her port side, sounding three blasts on her mechanical fog horn, indicating that the wind was abaft her beam, as required by article 15 (c) of the Inland Regulations.   At the same time the steamer Delaware was coming down the westerly side of the channel on a course S ½ W on her way from New York to Philadelphia, blowing her fog whistle as required by law.

When the schooner heard the steamer's whistle she starboarded a little to go more to the westerly side of the channel.   On hearing it a second time she starboarded further, and when she discovered the steamer, she put her helm hard up and threw her bow so far to the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

westward that her booms jibbed to the starboard side. The steamer struck her amidships and sent her to the bottom.

The lookout of the steamer reported three blasts of a fog horn a little on the port bow, and thereupon the master immediately ordered the helm hard aport and the engines ·full speed ahead. The answer states:

"Shortly after entering the fog the lookout reported three blasts of a fog horn a little on the port bow, which indicated a sailing vessel running free and bound up the channel. The helm of the Delaware was immediately put hard aport, and her engines rung full speed ahead in order to swing the ship's head more rapidly to starboard. Shortly afterwards, the sails and masts of a schooner running free, with her sails boomed out to port, were made at a distance of about one-fourth mile and about two points on the Delaware's port bow, on a course which would clear the steamship. Suddenly those on the Delaware observed that the schooner, which proved to be the pilot boat Ambrose Snow, was swinging to port under a starboard helm and changing her course so as to cross the Delaware's bow. The engines of the Delaware were immediately stopped and reversed, but the schooner kept going to port and swung directly across the Delaware's bow, rendering a collision unavoidable. Just before the Ambrose Snow crossed the steamship's bow, the schooner jibbed over, and shortly afterwards the vessels came together at about right angles, the stem of the Delaware striking the schooner at her starboard main chain plates. As a result of the collision the Delaware's stem was damaged and the schooner filled and sank."

At the trial the master testified that he hard aported and hooked up at the moment he saw the schooner; she then being 1 to 1½ points on his port bow, heading up the channel. We think the account given in the pleadings much more probable than that given by the master.

The District Judge held the schooner solely at fault·because of her change of course. Generally speaking, a vessel hearing the fog signal of another vessel approaching ahead should not change her course until the position and course of the other vessel is ascertained. Any attempt to locate her by the sound of her fog signals a few points on either bow is most dangerous. All the information the schooner had was that a steamer was approaching, probably on the usual channel course, while the steamer only knew that a sailing vessel was approaching with the wind free, but nothing of her precise course. Both vessels changed their courses, whereas apparently if either had held her course the collision would have been avoided.

The steamer was guilty of other faults. Upon hearing the fog horn of an approaching sailing vessel she should have stopped her engines in accordance with the provisions of article 16 of the Inland Rules. The St. Louis, 98 Fed. 750, 39 C. C. A. 201. Instead of this she did just the contrary, put them full speed ahead, although she was then going altogether too fast, some 6¼ knots through the water and with the tide between 8 and 9 knots over the land.

The decree is reversed and the court below directed to enter the usual decree for half damages and half costs in the District Court and full costs of this court to the libelant.