## THE AMAGANSETT.

(Circuit Court of Appeals, Second Circuit. January 12, 1915.)

No. 104.

1. COLLISION ⬤➡83—STEAM VESSELS CROSSING IN FOG—MUTUAL FAULTS.
The fishing steamers Falcon and Amagansett both *held* in fault for a collision in Nantucket Sound in a dense fog while on crossing courses, the former for giving course signals in violation of article 18, rule 9, of the Inland Rules (Act June 7, 1897, c. 4, § 1, 30 Stat. 100 [Comp. St. 1913, § 7892]), and in not stopping as required by article 16, although she heard the fog signals of the other vessel, and the latter in not stopping as required by such article on hearing the crossing signal of the Falcon.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 156, 167, 175; Dec. Dig. ⬤➡83.]

2. COLLISION ⬤➡80—STEAM VESSELS IN FOG—CONSTRUCTION OF INLAND RULES.
The provision of article 16 of the Inland Rules (Act June 7, 1897, c. 4, § 1, 30 Stat. 99 [Comp. St. 1913, § 7889]) that "a steam vessel hearing, apparently forward of her beam, the fog signal of a vessel the position of which is not ascertained shall, so far as the circumstances of the case admit, stop her engines, and then navigate with caution until danger of collision is over," is not limited to the hearing of fog signals, although such signals only are authorized in a fog by article 18, rule 9, but applies when a vessel in a fog hears any signal indicating the proximity of another vessel forward of her beam.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 152–155; Dec. Dig. ⬤➡80.

Signals of meeting vessels, see note to The New York, 30 C. C. A. 630.]

Appeal from the District Court of the United States for the Southern District of New York.

Following is the opinion of the District Court by Hough, District Judge:

From Handkerchief Lightship to Shovelful Lightship is a straight run of five knots.[1] About three-eighths of a mile south by east of Shovelful Lightship lies the Stone Horse buoy, which marks the easterly limit at that point of a five-fathom channel, there slightly less than half a nautical mile in width, but rapidly widening for a vessel bound to the westward.

About 9 p. m. of August 22, 1912, there were three steam fishing vessels at or approaching the Handkerchief Light vessel, viz., the Murray, the Amagansett, and the Edwards, bound east, while a fourth similar craft (the Falcon) was at or near the Stone Horse buoy, and bound west. This case arises out of a collision which shortly thereafter occurred between the Falcon and the Amagansett, resulting in the total loss of the former.

The place of collision is nearly marked by a wreck buoy still noted on charts and 1¼ knots southwest ¼ west from the Stone Horse buoy. The time of collision cannot be satisfactorily fixed. The estimates are wholly unreliable. But I do not think that the exact minute of collision is important. The place of collision is important, and it was very nearly the place where the wreck lies; for if, as Captain Grinnell says, the Falcon's fires went out in half a minute, her engines had little influence after collision, so that I am inclined to accept the estimate of Captain Edwards that the wreck "may be 25 to 30 rods from the place of collision." I think that whatever movement the Falcon made after collision was southerly and easterly. The tide set was on her port quarter, and it is argued that the Amagansett's blow tended to throw her bow to her own starboard; but she was seen heading east after collision, and her headway would continue until she was nearly under water.

Concerning the angle of collision, there is almost no controversy (Exhibit 2; Exhibit B). The bow of the Amagansett took the starboard side of the Falcon well abaft amidships and at an angle (between bows) of nearer two than three points. It is demonstrated that the Falcon just before collision was crossing the Amagansett's bows from port to starboard of the latter vessel and at rather an acute angle. The most obvious point regarding the evidence herein is that, if both Amagansett and Falcon were actually pursuing the courses sworn to by their respective officers, there never would have been a collision, because at or near the point where the Falcon's wreck now lies the vessels would have been nearly three-fourths of a knot apart.

The Falcon says that she passed Stone Horse buoy within a few feet on her port side and from that buoy as a departure laid a course southwest by south, which was steadily maintained until collision.[2] Before she got to the Stone Horse the fog was dense. When the Amagansett passed the Handkerchief Lightship, about an eighth of a mile on her port side, there was no fog, and to reach the Shovelful Light, with the tide setting westerly, a course was laid of northeast by east ½ east, and it is said that this course was steadfastly maintained until collision. Both of these statements cannot be true. Both have been testified to by men apparently intelligent and of good character. Which is nearer the truth must be decided by outside evidence and the probabilities of the matter.

In my opinion the decisive testimony comes from the boat Murray. As the Murray, Amagansett, and Edwards arrived near Handkerchief Lightship, the Murray was in the lead. As the Murray passed the Lightship, the latter was within 200 yards of the Murray's port side; the Amagansett being then a distance variously estimated from 700 to 800 feet to three-quarters of a mile on the Murray's starboard quarter, but nearly astern. The Edwards is said to have been about a mile dead astern of the Amagansett. As each of these three vessels passed Handkerchief Light, she set a compass course for Shovelful. The Murray made her course northeast by east ¼ east; the

---

[1] This is by the official chart; the Eldridge chart, put in evidence, appears to give the distance at 4⅞ miles. As a matter of fact, this chart scales six knots between the two lightships.

[2] All courses and directions stated in this opinion are magnetic.

Amagansett (as above noted), northeast by east ½ east; and the Edwards took the same course as did the Amagansett.

These three fishing boats have some business connection, and the masters of the Amagansett and the Edwards are brothers. But I do not think it would be possible for so many witnesses to testify so consistently on points of navigation as the men from these three vessels have done and be all the time telling untruths. I am therefore persuaded that the Murray, while on a course northeast by east ¼ east from a point within 200 yards southerly and easterly of Handkerchief Light, encountered the Falcon when about. a mile from Stone Horse buoy—the Falcon at the time steering a course which barely avoided a collision with the Murray of the same kind that she did have a few moments later with the Amagansett, except that the angle of collision would have been more acute (Exhibit I).

I likewise see no reason to doubt that very shortly after the Falcon passed the Murray the latter's master heard danger signals, and putting his wheel hard aport he rounded to and steered back southwest by south—by so doing coming "right down on the Amagansett just where I expected to find her." This means that he found the Amagansett just where he thought that she would be if she had steered from Handkerchief Light substantially the same course as did the Murray. The Murray's evidence is further borne out by that from the Edwards, which, maintaining her course, came right on the scene of disaster, of course after the Falcon had gone to the bottom.

It being thus demonstrated (in my opinion) that the Falcon was not steering southwest by south from a point within a few feet of the Stone Horse buoy, it is important to ascertain what she was doing. This is a very difficult question to answer, and the 'only reply that can be given is hypothesis. It is observable that, assuming the correctness of the courses sworn to from the Murray, Amagansett, and Edwards, the whole story of collision is solved and most of the testimony is reconciled by assuming that the Falcon did steer southwest by south, but not from a point so near Stone Horse buoy as is sworn to. If she took that course, not at the buoy, but when west of Shovelful Light, the matter is plain, and we have the Falcon on a west by south course going across the courses of the other three vessels, barely escaping a sharp angle collision with the Murray and actually having one with the Amagansett. Of course this can only be possible if Captain Grinnell lost his way, or if he is deliberately telling an untruth, which I am very loth to believe, and do not believe.

In my opinion he did lose his way, and the confusion of mind in which he was is illustrated by two things viz., the impossible and incredible heading which he gave to Captains Marran and Edwards immediately after collision, and his utter mistake, contradicted by his own men, in asserting that the Falcon passed within a couple of hundred yards of the Murray, whereas she passed within a very few feet of that vessel, as is overwhelmingly shown. This is the only way I can account for this collision without imputing perjury to several men of excellent character. I am persuaded that it is the reasonable explanation of this disaster, and, if true, it puts the Falcon grossly in fault for crossing the channelway in a fog, instead of staying on the starboard side thereof, where she must have been when she set her course southwest by south.

But, even without this finding, the Falcon admittedly did not obey the steering and sailing rules. The rules here referred to are rule 9 of article 18, which forbids the blowing of passing signals in fog, and article 16, which requires that a steam vessel "hearing, apparently forward of her beam, the fog signal of a vessel the position of which is not ascertained shall, so far as the circumstances of the case admit, stop her engines." The Falcon did blow passing signals in a fog, and when she heard the fog signals of a vessel that turned out to be the Amagansett forward of her beam and on her starboard bow she did not stop her engines at all, but blowing two whistles persisted at a speed of about three knots an hour and so ran into collision.

I feel sure that, had the Falcon stopped her engines, there would have been no collision. She heard the fog signals of both the Murray and the Amagansett; both the Murray and the Amagansett heard the Falcon blowing passing whistles on their port bows. As the event proved, the sound carried true in this fog. The Falcon was going slowly; she was heavy laden, and the tide

set was carrying her to the westward or further away from the Murray and Amagansett. If, therefore, she had obeyed the rule and stopped her engines, she certainly would not have encountered the Amagansett, and I think she would have been clear of the course of the Murray. For these reasons, the Falcon seems to be plainly in fault.

It remains to consider whether the Amagansett is free from fault. The Murray's lights became blurred and disappeared. This was the first warning of fog the Amagansett had, and it was sufficient to cause that vessel to slow her engines before she actually got into the fog. The first thing that the Amagansett heard of the Falcon was a blast of two whistles. This was just at or just before the time the fog closed down on the Amagansett; she was then going slow. Quite naturally those two whistles were taken to be a signal to the Murray, and the evidence shows that such was the Falcon's intent. Shortly thereafter the admitted second blast of the fog whistle was heard, and then the Amagansett stopped; as soon as the Falcon came in sight, she reversed.

It is impossible to say whether all way had been taken off the Amagansett at the moment of collision, but, as the Falcon never varied from her slow speed of an estimated three knots, I am of opinion that the force of the blow was caused more by the speed of the Falcon than by any advancing movement on the part of the Amagansett. I do not think the Amagansett could reasonably have been required to do more than she did do to avoid the collision. The only thing suggested is that she ought to have stopped or reversed at the first signal of two whistles. Having regard to the known position of the Murray, I think she was justified in continuing under a slow bell.

McLain, the pilot of the Amagansett, has been navigating the waters in question for more than a generation; he produced licenses which in terms cover the region around Cape Cod, but I do not think that his license in force at the time of collision did cover those waters. But a license does not always make a good pilot, nor the lack of it a poor one. For the purposes of this case, the question is, not what McLain was authorized to do, but what he did do.

It is said, also, that the Amagansett caused or contributed to the collision by porting her helm just before contact. McLain admits that he gave the order to port, and he evidently was prepared to argue in support of his opinion; but I see no reason to doubt that before his order could be carried into effect the master stopped him and held the Amagansett to a steady course.

The libel is dismissed, with costs.

Herbert Green, of New York City, for appellants.

Frank V. Barns, of New York City, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. [1] This case arose out of a collision August 22, 1912, at 9:30 p. m., in a dense fog in Nantucket Sound, between the fishing steamer Falcon, bound to the westward for Long Island, N. Y., and the fishing steamer Amagansett, bound to the eastward for Boston Bay. The District Judge found the Falcon solely at fault, and, as we concur in his finding of facts, it will not be necessary to repeat them.

The question we will consider is whether the Amagansett was also at fault. The trial judge found that after the Falcon had rounded Stone Horse buoy and got some way to the westward, she went off on a south-southwest course (printed in the record, no doubt by typographical error, as west by south) across the channel between Shovelful Shoal light vessel and Handkerchief Shoal light vessel. This brought her across the bows of the approaching fishing steamer Murray, which was steering northeast by east ¼ east, followed by the Amagansett on her starboard quarter at a distance variously estimated as from 700

feet to three-quarters of a mile, steering northeast by east ½ east. The locality was within the inland rules of 1897, rule 9 of which provides that in fog, when vessels cannot see each other, only fog signals must be given, and article 16 which provides:

"Art. 16. * * * A steam vessel hearing, apparently forward of her beam, the fog signal of a vessel the position of which is not ascertained shall, so far as the circumstances of the case admit, stop her engines, and then navigate with caution until danger of collision is over."

The Falcon, without seeing the Murray, blew her a course signal of two whistles, and some two minutes later a similar signal to the Amagansett, without seeing her. The Murray and Amagansett blew only the statutory fog signals. Upon hearing the first signal of two blasts, the Amagansett slowed her engines to half speed, and upon hearing the second signal stopped, and upon the lights of the Falcon coming in sight went full speed astern. Notwithstanding this, the Amagansett struck the starboard quarter of the Falcon some 35 to 40 feet forward of her stern, sinking her almost immediately. It will be perceived that the Falcon needed only about 40 feet to clear. The two signals of two blasts from a steam vessel approaching on the port bow indicated to the Amagansett that she was starboarding and going in a direction approaching or crossing the Amagansett's course. This was a situation that made stopping unusually important. Taking the speed of the Amagansett after slowing to be as her master testified, three knots over the land, it seems obvious that, if she had stopped her engines after she heard the first signal of two whistles, no collision would have taken place. The burden lay upon the Amagansett to show that this violation of a statutory rule could not have contributed to the collision. Yank-Tsze Insurance Co. v. Furness, 132 C. C. A. 201, 215 Fed. 859. This rule is a most salutary one, consistently enforced in this court (The St. Louis, 98 Fed. 750, 39 C. C. A. 201; The Delaware, 213 Fed. 214, 129 C. C. A. 558; The Bayonne, 213 Fed. 216, 129 C. C. A. 560), and we have no hesitation in finding the Amagansett at fault for violating it.

[2] At the hearing counsel for the Amagansett contended that article 16 did not apply, because it mentions only fog signals, whereas the two signals of two blasts were not fog signals, but course signals. No doubt article 16 mentions fog signals only because rule 9 of the act provides that course signals must not be given in a fog when vessels do not see each other. The reason of the rule applies to any signal indicating the proximity of a vessel forward of the beam, and in this case, as we have seen, the course signal gave greater notice of danger than fog signals would have done. To construe article 16 literally would be to stick in the bark and to defeat the obvious intention of Congress.

The decree is modified, and the District Court directed to enter the usual decree of half damages and costs in the District Court, with full costs to the Falcon in this court.