## THE SUFFOLK.

## THE BRAZOS.

### (Circuit Court of Appeals, Second Circuit.   April 16, 1919.)

### Nos. 182, 183.

1. COLLISION ⬥⟲83—STEAMSHIPS ON CROSSING COURSES—VIOLATION OF RULES.
   A collision at sea in a dense fog between two steamships on crossing courses *held* due to faults of both; one being in fault for excessive speed, and both for failure to obey the imperative requirement of article 16 of the International Rules (Comp. St. § 7854), to stop their engines on hearing the signal apparently forward of their beams.

2. COLLISION ⬥⟲17—FAULT—PRESUMPTION FROM VIOLATION OF RULES.
   A vessel which violates a statutory rule must be held in fault for a following collision, in the absence of proof that such violation did not contribute thereto.

Appeals from the District Court of the United States for the Southern District of New York.

Suit in admiralty for collision by the Mallory Steamship Company, owner of the steamship Brazos, against the steamship Suffolk, the Coastwise Transportation Company, claimant, with cross-libel. Decree holding both vessels in fault, and the claimant of the Suffolk appeals. Affirmed.

Burlingham, Veeder, Masten & Fearey, of New York City (Charles C. Burlingham and Chauncey I. Clark, both of New York City, of counsel), for Mallory S. S. Co.

Blodgett, Jones, Burnham & Bingham, of Boston, Mass. (Edward E. Blodgett and Albert T. Gould, both of Boston, Mass., of counsel), for Coastwise Transp. Co.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

WARD, Circuit Judge. [1] January 22, 1916, about 3:30 p. m., in a dense fog, the twin-screw passenger steamer Brazos, proceeding at about 8 knots an hour, with her engines at slow, on a voyage from New York to San Juan, Porto Rico, heard the fog whistle of a steamer which proved to be the single-screw steamer Suffolk, about four points on the starboard bow.

At the same time the steamer Suffolk, bound from Newport News with a cargo of coal to Boston, proceeding with her engines at half speed, heard the whistle of the Brazos about 2 points on her port bow, whereupon she put her engines at dead slow.

At 3:34 the Suffolk heard a second and louder signal from the Brazos, still two points on her port bow, whereupon she ported two points and stopped her engines.

At 3:40 the vessels hove into sight, each having the other from three to four points on the port and starboard bows, respectively; the Suffolk heading almost at a right angle with the Brazos' starboard side.

The Brazos hard-astarboarded, put her starboard engine full speed ahead and her port engine full speed astern for the purpose of swinging away from the Suffolk, while the Suffolk blew three whistles and put her engines full speed astern. Nevertheless they came together, the bow of the Suffolk contacting with the starboard quarter of the Brazos at a point about 100 feet forward of her stern.

Judge Manton held the Brazos solely to blame for excessive speed in the fog, but subsequently, having had his attention drawn to the decision of the Supreme Court in Lie v. San Francisco & Portland Steamship Co., 243 U. S. 291, 37 Sup. Ct. 270, 61 L. Ed. 726, then lately handed down, modified his conclusion by holding the Suffolk also at fault for failing to stop her engines on first hearing the signal of the Brazos forward of her beam, as required by article 16 of the International Regulations.

International Regulations adopted by Congress March 3, 1885 (23 Stat. 441), contained the following provision:

"Art. 13. Every ship, whether a sailing ship or a steamship, shall in a fog, mist, or falling snow go at a moderate speed."

The International Regulations of 1890 altered this provision as follows:

"Art. 16. Every vessel shall in a fog, mist, falling snow or heavy rain storm, go at a moderate speed and having careful regard for the existing circumstances and conditions. A steam vessel hearing apparently forward of her beam, the fog signal of a vessel, the position of which is not ascertained, shall, so far as the circumstances of the case admit, stop her engines and then navigate with caution until danger of collision is over." Act Aug. 19, 1890, c. 802, 26 Stat. 326 (Comp. St. § 7854).

Congress, in adopting the present International Regulations of 1890, recognized that the provision of the regulations of 1885 was not sufficient, and expressly added the requirement that vessels proceeding at a moderate speed in a fog should stop their engines on hearing a signal forward of their beam.

The decision in the case of Lie v. Steamship Co., supra, conclusively determines that the duty to stop the engines is imperative, so far as the circumstances of the case admit, when a steamer proceeding at a moderate speed in a fog hears a fog signal forward of her beam. Mr. Justice Clarke said:

"The most cursory reader of this rule must see that, while the first paragraph of it gives to the navigator discretion as to what shall be 'moderate speed' in a fog, the command of the second paragraph is imperative that he shall stop his engines when the conditions described confront him. The difficulty of locating the direction or source from which sounds proceed in a fog renders it not necessary to dwell upon the purpose and obvious wisdom of this second paragraph of the rule."

[2] We think it perfectly clear that the Brazos was at fault for excessive speed and that the District Judge was right in modifying his first opinion by holding the Suffolk also at fault for not stopping her engines when she heard the first signal of the Brazos ahead on her port bow. Nothing in the circumstances of the case prevented her from so doing, and in the absence of proof that the violation of the statute did not contribute to the collision, the Suffolk must be held also at fault. The Pennsylvania, 19 Wall. 125, 22 L. Ed. 148.

It is, however, obvious that if the Suffolk had stopped her engines when she first heard the signal of the Brazos, or even when she heard the second signal, the Brazos would have passed safely across her bows.

Apart from the fault of the Suffolk in failing to conform to this general requirement of care prescribed by the statute, she had particular notice in this case that the Brazos was approaching on a course involving danger of collision. At 3:30 p. m., when going at a speed of 8 knots, she heard the first signal of the Brazos two points on her port bow and reduced to slow. At 3:34 she heard the second signal, still two points on her port bow. This showed that the Brazos was approaching without any change of bearing, indicating to a competent navigator that the vessels were on converging courses. Thereupon the Suffolk ported two points, and at 3:38 heard the third signal of the Brazos four points on the port bow, which, allowing for the Suffolk's change of course of two points to eastward, indicated that the Brazos had not altered her course, and that the vessels were still approaching on converging courses, involving danger of collision. At 3:40 the vessels hove in sight of each other, and then they were so close that, although the Brazos hard-astarboarded, and put her starboard engine ahead and her port engine astern at full speed, so as to throw her out of the way of the Suffolk, and the Suffolk blew three blasts and went full speed astern, the starboard quarter of the Brazos, about 100 feet from her stern, struck the stem of the Suffolk at 3:41.

These times, taken from the log of the Suffolk, in connection with the testimony of her master and second officer, who were both in the

pilot house, make it perfectly apparent on her own story that when the vessels saw each other collision was unavoidable, even if she were barely moving in the water, as her witnesses say.

In the case of The Persian, 224 Fed. 441, 140 C. C. A. 135, much relied on by the appellant, the Persian heard the Millinocket's signal ahead at 12:12, and stopped her engines; at 12:14 she went full speed astern, and at 12:15 the collision happened. It will thus be seen that she complied strictly with article 16 as to stopping her engines. The fault charged against her was that she altered her course, but this we held not to have been a fault under the circumstances. In this case we have not thought it necessary to consider whether or not the Suffolk was at fault for porting two points.

Decisions in cases of collision happening before the present International Regulations of 1890 had been adopted by Congress should be read with that fact in mind.

The decree is affirmed.