# THE NEW LONDON.

## THE EGERTON.

(Circuit Court of Appeals, Second Circuit. February 4, 1921.)

### Nos. 125, 126.

Collision ☞83—Mutual faults of meeting steam vessels.

A freight steamer and a meeting tug, with a tow, both *held* in fault for a collision in Long Island Sound in a dense fog, for failing to stop on hearing the fog signals of the other ahead, as required by article 16 of the inland Rules (Comp. St. § 7889), and the tug also for failing to maintain a proper lookout or to sooner hear the fog signals of the steamer.

Appeals from the District Court of the United States for the Eastern District of New York.

Suit in admiralty for collision by the Egerton Towing Company against the steamer New London; the Central Vermont Transportation Company, claimant, with cross-libel against the steam tug Egerton. Decree against the New London alone, and her claimant appeals. Modified, to hold both vessels at fault.

For opinion below, see 253 Fed. 842.

Appeal by Central Vermont Transportation Company from decrees in admiralty entered in the District Court for the Eastern District of New York, holding appellant's steamer New London solely at fault for a collision between that steamer and the steam tug Egerton. The New London is a freight steamer with a possible speed of about 16 miles an hour. On the evening before this collision she left New London, Conn., on her regular trip to New York. On her usual and expected course she would pass Execution Rock and light on her starboard hand at a distance of about an eighth of a mile.

Before reaching Execution the fog was so thick that the lighthouse could not be seen, and the fog horn thereat was not heard. Yet the steamer's log states that "when about one-half mile east of Execution Rock light, Thursday morning, September 9 [1915], about 7 a. m., was in collision with towboat Egerton, towing three light scows going east." The Egerton was bound from Newtown Creek to Hempstead, and had the three sand scows on a hawser of about 10 fathoms. Her course was from the Gangway Rock buoy to Sands Point buoy, a path which would keep her well out of the way of vessels bound in for New York from the Sound and approaching Throggs Neck. The tug passed the latter buoy close aboard, and when somewhat to the eastward thereof was struck on her starboard side by the New London. Both vessels were damaged, and each filed a libel. The District Court exonerated the Egerton, and this appeal followed.

Haight, Sandford, Smith & Griffin, of New York City (Henry M. Hewitt, of New York City, of counsel), for appellant.

Foley & Martin, of New York City (George V. A. McCloskey, of New York City, of counsel), for appellee.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). In our judgment the apostles present no material disputed question of fact. There is controversy as to the hour and place of collision, but it is uncontradicted that the accident happened in a very dense fog, that

both vessels had been in the fog for some time before they came together, and that both were in waters known to be frequented by vessels such as the two before us.

Consequently it makes no difference whether collision occurred at 7:30 a. m., or a half hour or more earlier, or whether the New London was (as she plainly was) considerably off her course when she struck the Egerton. For neither the time of contact nor the place of collision affected the rules of navigation applicable to both tug and steamer. Both alike were bound to observe the duty of maintaining a vigilant lookout, and to obey article 16 of the Inland Rules (Comp. St. § 7889).

The New London, by her own account, heard the fog whistles of the Egerton forward of her own beam after she had been in fog for well over a half an hour. It may be admitted that on hearing the Egerton's whistles she at once stopped her engines, but it is plain that she came in view of the tug and then into collision at such speed as rendered her unable to stop within the distance other vessels could be seen. Thus she violated one of the oldest rules of steam navigation, often announced and lately restated by us in The Manchioneal, 243 Fed. 805, 156 C. C. A. 313. We therefore agree with the lower court in its finding as to the New London.

The Egerton, by her own testimony, had stopped her engines not long before collision so as to insure safety from another steamer (said to be the Sagamore). That vessel passed close aboard, and thereupon the tug proceeded under "one slow bell," although at least her pilot then heard, or almost immediately heard, the fog signals of the New London. When the steamer appeared through the fog collision was probably inevitable, and then the Egerton "gave a jingle to see if [her captain] could throw her astern." Collision occurred almost immediately.

Under the circumstances it was a violation of rule 16 not to stop the Egerton's engines on hearing the New London's fog whistles forward of her beam. The rule contains "an imperative requirement." The Suffolk, 258 Fed., 219, 169 C. C. A. 287. It has been urged that this error did not contribute to the collision, and that when the fault of the New London is glaring the court should not be astute to discover minor error on the part of the tug. Both arguments rest upon well-settled rules of decision; but it is always equally true that where a violation of rule is proven the burden is upon the violator to show that disobedience did not contribute. The No. 25 (C. C. A.) 266 Fed. 331. It is to say the least doubtful whether that burden has been borne by the Egerton in respect of the fault just discussed.

But in two other respects the tug is in our judgment plainly at fault. There is no reason to doubt that the New London approached blowing proper fog signals, and they were not timely heard by the Egerton. Considering that her own signals were heard, that she had heard the whistles of the vessel referred to as the Sagamore, no excuse can be received for this failure in vigilance. Again, the Egerton was without any proper lookout. It is said that there was a deckhand forward; but he was undoubtedly aft of one of the engineers who was idling in the

bow. Wherever he was, he did nothing, and was not in his place, which is the bow, as pointed out in The Manchioneal, supra.

It is not only impossible to say that the absence of a vigilant lookout did not contribute to this collision, but it is in our judgment plain that it did so contribute. It makes no difference that the Egerton, at and for some time before collision, was moving very slowly; a lookout must be maintained even when a vessel is stopped, as we held in The Plainfield, 205 Fed. 730, 124 C. C. A. 24, a case which in its material aspects is not unlike the present.

The decree below is modified, so as to hold both vessels at fault, and appellants are granted the costs of this court.