## THE HAVEN.

(Circuit Court of Appeals, Second Circuit. December 14, 1921.)

### No. 75.

1. **Collision** ⬅➡100(2)—**Drill boat held at fault in drowning out sound of bell by working drill in fog.**

    A drill boat, working near a pier in the East River in a thick fog, was at fault in drowning out the sound of its bell by the working of the drill, and it was no excuse that the noise of the drill might be heard, as this was not the warning to which moving craft are entitled, and such sound was apt to be puzzling and confusing.

2. **Collision** ⬅➡82(1)—**Rule of navigation in fog stated.**

    A vessel navigating in a fog must go no faster than will permit her to stop within the distance she can see ahead.

3. **Collision** ⬅➡68—**Steamer held at fault in not anchoring, instead of drifting aimlessly, in thick fog.**

    A steamer, colliding with a drill boat in the East River during a fog so thick that it was difficult, if not impossible, to see an object at any safe distance, *held* at fault in not anchoring, instead of drifting aimlessly, especially where its master knew that the drill boat was in the neighborhood.

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Southern District of New York.

Libel in admiralty by the Great Lakes Dredge & Dock Company against the steamer Haven, her engines, etc., claimed by Harriet M. Spraker and another. From a decree for the libelant, the claimants appeal. Modified.

Macklin, Brown, Purdy & Van Wyck, of New York City (Pierre M. Brown, of New York City, of counsel), for appellants.

Haight, Smith, Griffin & Deming, of New York City (Henry M. Hewitt, of New York City, of counsel), for appellee.

Before ROGERS, HOUGH, and MAYER, Circuit Judges.

MAYER, Circuit Judge. The Haven, a Sound steamer, 190 feet by 40 feet, was bound from New Haven to her pier in the North River. Her master was apparently thoroughly experienced, having been licensed for 15 years' and on the Haven for 10 years.

We are satisfied with his account of his difficulties. He testified that he' struck "a very thick fog" when he got down a little below the Navy Yard in the East River. There was nothing to warn him of the fog at Corlears Hook, or, for that matter, prior to the time that the fog was encountered. The situation was one which called for the exercise of judgment, and he concluded not to anchor. He sounded proper fog signals, then slowed his vessel, then stopped, then proceeded cautiously, and thought he lost steerage way, then started ahead again under one bell, and again proceeded cautiously until he lost steerage way. He continued in the same manner—that is, stopping, proceeding, losing steerage way, and starting again—until he reached Fulton Ferry, and then he stopped his engines and drifted down with the ebb tide.

Finally, the Haven came into collision with the drill boat No. 8, working on Coenties Reef, off Pier 6, Manhattan shore. The time was about 4:30 a. m. on January 30, 1917. The lights of the drill were observed "just about two minutes" before she struck; but, although the Haven reversed, it was too late, because she sagged down against the drill in the tide.

The Haven's witnesses are united in testifying that they did not hear any bell nor other warning from the drill. The government inspector on the drill testified that the bell "was ringing continually during the fog; the man would ring, and would stop maybe a minute, about, and then ring again"; but the inspector could not hear the bell, because the drill was working, and the noise of the drill manifestly shut out the sound of the bell.

We have no doubt that those on the Haven were prevented from hearing the bell by the noise of the working drill. The master of the Haven knew that the drill was "in that neighborhood," and expected to hear from her.

[1] 1. We think the fault of the drill is plain. In the circumstances, it was her duty to warn approaching vessels by the sound of

the bell. If, under the fog conditions here described, instead of making sure that the ringing bell was heard, she took all the chances of "drowning out" the sound by the noise caused by the working of the drill, she invited collision. It is no excuse that the noise of the drill might have been heard. First, that is not the kind of sound with which it was her duty to warn moving craft; and, secondly, such a sound in that location is apt to be puzzling and confusing.

[2, 3] 2. The fault of the Haven is not so patent. We recognize that a problem calling for the exercise of sound judgment confronted the Haven's master, and we are not disposed to substitute our judgment for that of the master, where we think there is a fair choice between two courses. We agree that the situation was such that it was unwise, probably useless, to attempt to steer by compass. The question, then, was whether the master should let the Haven drift or whether he should anchor.

A vessel navigating in a fog must go no faster than will permit her to stop within the distance she can see ahead. The fog was very thick, and thus it was difficult, if not impossible, to see an object at any safe distance. The master testified that, when he saw the lights of the drill, he was only 50 to 100 feet away. To drift blindly and aimlessly and uncontrolled in such a dense fog as the Haven's witnesses described is a proceeding full of potential danger in crowded waters, and particularly in this case, where the master knew that the drill was in the "neighborhood."

To attempt to turn around would also have been most unwise. By far the least dangerous course was to anchor. The objection to dropping anchor, according to the master, was that "she would have swung around and maybe struck something at the head of the dock * * *"; and the City of Lowell. 152 Fed. 594, 81 C. C. A. 583, is cited in support of the master's navigation.

In that case, the court was not favorably impressed with the suggestion that the steamer should anchor, but the point of the case was that "the distance was not great from the place below the Williamsburg Bridge, where the fog closed in, to the more open water beyond the river's mouth, and the bells on successive ferry slips were guides by which the navigators could note their progress, and determine when they had reached the point where the necessary change of compass course should be made," and that the court was satisfied that the navigators of the Lowell "had made a serious miscalculation as to their course."

Here, however, the vessel was permitted to drift in a dense fog, and we think that the danger of striking something when anchoring is much less than the danger of striking something or being struck when drifting in such a fog. In brief, our view is that a vessel of this size in these waters in this fog should have anchored, or attempted so to do, that such was her duty in these circumstances, and that to drift was so much more likely to cause or result in some collision that her master was not confronted with a fair choice between two courses in

determining so to do, but that he erred, and the Haven must therefore be found in fault.

The decree is modified, by awarding half damages and half costs to appellee, with costs of this appeal to appellant.