**NEW YORK & CUBA MAIL S. S. CO. v. UNITED STATES.**

**THE ESPERANZA.**

(Circuit Court of Appeals, Second Circuit. January 10, 1927.)

No. 135.

1. **Collision ⟪83—Both steamship and torpedo boat destroyer, colliding in fog, held at fault (International Rules, art. 16 [Comp. St. § 7854]).**

Both steamship and torpedo boat destroyer, colliding in fog, *held* at fault for failure to comply with International Rules, art. 16 (Comp. St. § 7854), requiring vessel hearing forward of her beam fog signal of vessel, whose position is not ascertained, to stop her engines and navigate with caution.

2. **Collision ⟪82(1)—Excessive speed, in violation of international rule, is sufficient to charge vessel with responsibility for collision (International Rules, art. 16 [Comp. St. § 7854]).**

Excessive speed of vessel colliding with another in fog, in violation of second paragraph of International Rules, art. 16 (Comp. St. § 7854), is sufficient to charge that vessel with responsibility.

3. **Collision ⟪123—Vessel shown to have violated international rule has burden of showing that violation could not have contributed to collision (International Rules, art. 16 [Comp. St. § 7854]).**

In libel for damages from collision, vessel shown to have violated International Rules, art. 16 (Comp. St. § 7854), has burden of showing that her failure to obey the rule could not possibly have contributed to the collision.

4. **Collision ⟪82(1)—Vessel navigating at speed such that she cannot stop within distance that she can see ahead after hearing fog signal violates international rule (International Rules, art. 16 [Comp. St. § 7854]).**

Vessel which, after hearing, apparently forward of her beam, fog signal of vessel whose position is not ascertained, navigates at a speed so fast that it cannot stop within the distance which it can see ahead, is guilty of violating International Rules, art. 16 (Comp. St. § 7854).

5. **United States ⟪110—Under statute specially authorizing suit against United States for damage for collision, interest on award held recoverable (Act Feb. 28, 1923 [42 Stat. 1778]).**

Under Act Feb. 28, 1923 (42 Stat. 1778), specially authorizing suit in admiralty against the United States to recover "damages" for collision between steamship Esperanza and United States torpedo boat destroyer "upon the same principles * * * as in like cases in admiralty between private parties," owner of steamship Esperanza was entitled to recover interest on the amount of its recovery against the United States.

16 F.(2d)—60

6. **United States ⟪110—Interest is not recoverable against United States, in absence of statute or contract, or submission to jurisdiction of court, or assumption of position of private party.**

The United States is not liable to pay interest, in the absence of a statutory provision, except where it has contracted to pay it, or where it submits itself to the jurisdiction of the court, or, if sued, places itself in position of a private party.

7. **United States ⟪110—Interest may be recoverable against United States as part of "legal damages."**

A recovery of interest against the United States may be provided for under the name of "legal damages."

Appeal from the District Court of the United States for the Southern District of New York.

Libel by the New York & Cuba Mail Steamship Company, as owner of the steamship Esperanza, against the United States, as owner of the torpedo boat destroyer Conner, with cross-libel by the United States, libelant, against the Steamship Esperanza her engines etc., the New York & Cuba Mail Steamship Company, claimant. Decree for libelant, New York & Cuba Mail Steamship Company, against the United States, and libel of the United States against the Esperanza dismissed (300 F. 827) and the United States, as owner of the Conner, appeals. Decree modified.

Emory R. Buckner, U. S. Atty., of New York City (Charles E. Wythe, and Horace M. Gray, Sp. Asst. U. S. Attys., both of New York City, of counsel), for the United States.

Burlingham, Veeder, Masten & Fearey, of New York City (Chauncey I. Clark and Eugene Underwood, Jr., both of New York City, of counsel), for New York & Cuba Mail S. S. Co.

Before HOUGH, MANTON, and MACK, Circuit Judges.

MANTON, Circuit Judge. The vessels referred to in these libels collided at sea, off Barnegat, N J., on the night of February 14–15, 1918, while navigating in a dense fog. Both were damaged, and libels have been filed to recover for their respective losses. The Conner is a torpedo boat destroyer of the United States Navy, about 350 feet long and 30 feet beam, with a draft of 8½ feet and a displacement of 1,140 tons. She was equipped with four boilers, triple screws, turbine driven, with 20,000 shaft horse power. Her maximum speed was 30 knots. On the forenoon of February 14, 1918, she left Philadelphia, Pa., to proceed to Newport,

R. I. She was a new vessel, and her orders required her to make four hour test runs on her cruising turbines en route to Newport at 13, 16, 20 hours, respectively. At 9:30 p. m. fog set in, which continued up to the time of the collision at 12:11. The Esperanza, carrying passengers and general cargo, left Brooklyn on the afternoon of February 14, bound for Cuba and Mexican ports. She was a twin screw steamer, about 4,200 gross tons, 341 feet long, 47.7 feet beam, with a maximum speed of 13.6 knots. After leaving her port, she continued at her maximum speed until about 10:25 p. m., when she reduced to half speed, and this speed continued until the time of the collision. The rough log entries of the Esperanza give her distance by taffrail log from Scotland Light vessel at 10:15 as 29.2 miles. An entry at 10:25 states, fog, running at half speed; at 10:30, dense fog, running slow; at 12 o'clock, total run of the taffrail log is 40.9, making a distance of 11.7 miles covered in 1¾ hours between 10:15 and midnight. This gave a speed of 6.68 knots which was her average speed. At 12:08 a fog signal from the Conner was heard by the Esperanza forward of the beam and on the starboard bow. This was three minutes before the collision. The Esperanza continued on her course and did not stop her engine until the collision. She continued blowing her fog signals at the same intervals, but did nothing more. No further fog signals were heard from the Conner until just about the time she came out of the fog and the vessels collided, when another long blast was heard from the Conner. The Conner struck the Esperanza a glancing blow on the starboard side and disappeared in the fog. The Esperanza put about, headed back for New York, made her port without assistance, and was there repaired.

Article 16 of the International Rules provides that "a steam vessel hearing, apparently forward of her beam, the fog signal of a vessel the position of which is not ascertained, shall, so far as the circumstances of the case admit, stop her engines, and then navigate with caution until danger of collision is over." Comp. St. § 7854.

[1-3] Both vessels violated this rule. Fog signals were heard by the navigators of each. The Conner's commander heard two separate whistle signals, both from the Esperanza. The Esperanza's commander also heard the whistle of the Conner. In The Selja, 243 U. S. 291, 37 S. Ct. 270, 61 L. Ed. 726, the Supreme Court pointed out that the first paragraph of this rule gives to the navigator discretion as to what shall be moderate speed in fog, but the command of the second paragraph, above quoted, is imperative that he must stop his engines when the conditions described confront him. We have been firm in adhering to the obligations of this rule. See The Easton (C. C. A.) 239 F. 259; The St. Louis (C. C. A.) 98 F. 750; The Delaware (C. C. A.) 213 F. 214; The Suffolk (C. C. A.) 258 F. 219; The No. 25 (C. C. A.) 266 F. 331. Excessive speed, in violation of the second paragraph, is sufficient upon which to rest responsibility of the vessel which violates the rule. The Esperanza clearly committed a violation of the statute, and the burden rests upon her for failing to show that her failure to obey the rule could not possibly have contributed to the collision. The Pennsylvania, 19 Wall. 125, 22 L. Ed. 148; The Suffolk (C. C. A.) 258 F. 219.

The bow of the Conner struck the Esperanza about abreast of the bridge. If the Esperanza had retarded her progress but a trifle in compliance with the rule, the Conner would have cleared. If she had stopped her engines when she first heard the fog signals, three minutes before the collision, she would not have reached the intersection of the Conner's course until the Conner had passed. For the same reason, the Conner is at fault. The excuses offered by her commander for not stopping are entirely irrelevant and insufficient. Article 16 was intended for the prevention of collisions at sea, and, to be of any effect, it must be construed to require the steamers to stop their engines when any sound, which is thought to be a fog signal of another vessel, is heard, particularly in a fog, which, as in this case, had prevailed for a sufficient length of time previous to the collision to cause navigators to be alert, so as to hear signals. Where the warning was received, or even where the commander thought he heard a whistle forward of his beam, that is enough notice of the proximity of a vessel forward of his beam, so as to cause him to comply with the rule. Reasonable prudence under the circumstances would dictate the urgent demand of the stoppage and reversal of the engines, in order that the vessel might be brought to a standstill as soon as possible. And even where a vessel is proceeding at half speed, the obligation to stop is none the less imperative. If the rule is to be of any effect, an earnest and sincere desire to prevent collision commands that it be strictly adhered to.

[4] The rule governing the speed of a vessel in a fog is entirely relative, when depending upon the range of visibility at the time and the possibility of stopping the ship before reaching the object which should be seen in the fog. But there cannot be the slightest hesitancy in concluding that there is a breach of the rule where the vessels have each navigated at a speed which is so fast that they cannot stop within the distance that they can see ahead. The Nacoochee, 137 U. S. 330, 11 S. Ct. 122, 34 L. Ed. 687; The Haven (C. C. A.) 277 F. 957; The Manchioneal (C. C. A.) 243 F. 801. The fog was so dense that neither vessel could see the lookout man on its own bow, and lights could not be seen for more than 200 or 300 feet ahead. Neither vessel could be stopped, going at the speed at which it was navigating within these distances. Neither vessel stopped its engines before the collision. The responsibility of both is so plain that we do not hesitate pronouncing both responsible for the consequences of the collision.

[5] The libel is dependent on the special Act of Congress approved February 28, 1923 (42 Stat. 1778), which permits the owner of the Esperanza to sue in a court of admiralty, and "acting under the rules governing such court, and said court shall have jurisdiction to hear and determine such suit and to enter a judgment or decree for the amount of such damages and costs, if any, as shall be found to be due against the United States in favor of the owner of the said American steamship Esperanza, or against the owner of the said American steamship Esperanza, in favor of the United States, upon the same principles and measures of liability as in like cases in admiralty between private parties, and with the same rights of appeal." The appellee argues on this appeal that it should be awarded interest on the amount of its recovery. The court below declined to allow this. By the authority of the statute, the appellee may maintain its libel, as it would between private parties. In a suit between private parties in admiralty growing out of collision, it has long been settled that interest is awarded as part of the measure of damages. The object of the award of damages is to place the injured party in the same pecuniary position as he would have been in but for the collision.

[6, 7] This principle has been referred to in admiralty as that of the right to a full and complete indemnity. The phrase the legal "damages * * * found to be due

* * * upon the same principles and measures of liability as in like cases in admiralty between private parties," when given the interpretation intended by Congress in this enactment, included an award of interest, as is allowed in the case of a litigation between private parties in admiralty. The United States is not liable to pay interest in the absence of a statutory provision to that effect, except where it has contracted to pay it, or where the United States submits itself to the jurisdiction of the court, or, if sued, places itself in the position of a private party. United States v. Thekla, 266 U. S. 340, 45 S. Ct. 112, 69 L. Ed. 313. Interest may be provided for by the name of legal damages. Congress has done so in granting this relief to private parties, where a vessel has been injured in collision with a public vessel. We must give to the language employed its ordinary and accepted meaning. We must presume that Congress intended that the principle of restitutio in integrum should be applied, as it is in cases in admiralty of like nature between private parties. In The Paquete Habana, 189 U. S. 453, 23 S. Ct. 593, 47 L. Ed. 900; Nuestra Senora de Regla, 108 U. S. 92, 2 S. Ct. 287, 27 L. Ed. 662.

In U. S. ex rel. Angarica v. Bayard, 127 U. S. 251, 8 S. Ct. 1156, 32 L. Ed. 159, interest was disallowed, and this, because interest is not collectible against the government, except where the government stipulates to pay interest, or where interest is given expressly by an act of Congress, either by the name of interest or by that of damages. That case is distinguishable because there was no such exception. In Seaboard Air Line Ry. v. United States, 261 U. S. 299, 43 S. Ct. 354, 67 L. Ed. 664, the Supreme Court pointed out the exception within the doctrine of the Angarica Case, where a statute employed terms so comprehensive as to require allowance of interest, and allowed interest as just compensation. The present act of Congress, upon which this libel is maintainable, provides for the jurisdiction, adjudication of conflicting claims of the government and a citizen, and requires such adjudication, including the measure of damages, to be made in the same legal method as private controversies are adjudicated. The intention of Congress is clear and explicit to grant full indemnity in the award against the United States, if any is made. Indemnity is not complete without interest. The admiralty courts in suits against private persons have always followed this rule. We

think Congress intended that it should be followed in this instance. It was error to refuse interest in the court below.

The decree will be modified, so as to hold both vessels at fault, and to award interest on the claim of the New York & Cuba Mail Steamship Company, as owner of the steamship Esperanza.

Decree modified, with costs to appellant.