## THE QUIRIGUA.

## THE SOUTHERN CROSS.

### UNITED MAIL S. S. CO. v. FARLEY et al.
### Nos. 14294, 14652.

District Court, E. D. New York.
Oct. 5, 1936.

Morgan & Lockwood, of New York City (Mark W. Maclay, of New York City, of counsel), for libelants and cross-claimants-respondents.

Burlingham, Veeder, Clark & Hupper, of New York City (Chauncey I. Clark and Eugene Underwood, both of New York City, of counsel), for United Mail S. S. Co.

MOSCOWITZ, District Judge.

These two libel proceedings were tried together.

A collision occurred on March 4, 1934, between the steamship Quirigua and the steamship Southern Cross, which was anchored in lower New York Bay. The Southern Cross is 535 feet long and 72 feet wide. The Quirigua is 448 feet long and 60 feet wide. At the time of the collision the approximate drafts of the vessels were:

|  | Forward | Aft | Mean |
| --- | --- | --- | --- |
| Southern Cross | 20'8" | 30'4" | 25'6" |
| Quirigua | 21'4" | 23'6" | 22'5" |

Each is a combination passenger and cargo vessel with flush deck fore and aft and a large superstructure amidships. At the time of the collision the wind was very light SE, the tide was ebb with the current running SSE about 1.6 knots.

The Southern Cross left pier 64, North River, at 6:12 a. m. on a voyage to South American ports. At the time of the departure visibility was fair and the tide was flood. Due to the heavy fog the Southern Cross anchored. The witnesses for the Southern Cross claim that she anchored within the Gravesend Bay anchorage ground. This is what she could and should have done, but did not do. Instead she was anchored in the fairway. Had she been anchored in the anchorage ground the collision would have been avoided.

At the time of the accident the fog was extremely dense, limiting visibility to a distance of about 200 to 250 feet. Shortly before 4:35 p. m. those on the Southern Cross heard short blasts of a whistle from the Quirigua, which was directly astern of the Southern Cross. About twenty to thirty seconds later the Quirigua appeared out of the fog astern and her bow struck the port quarter of the Southern Cross. The Quirigua continued to move forward, glanced off the port quarter of the Southern Cross, and came up abreast of her at a distance of about 200 feet and then disappeared in the fog. The Quirigua did not stop, but continued on and anchored at Quarantine at 5:17 p. m. The Southern Cross remained at anchor until after the fog lifted about 5:50 p. m.

■ The Southern Cross is at fault in having anchored in the channel, thus obstructing navigation. However, the Quirigua is likewise at fault. She should have anchored. Evidently she was hurrying, as she was due to dock at 6 p. m. Assuming that she had the right to proceed and was not required to anchor, she was proceeding at a dangerous rate of speed in a fog. The rule is that a vessel must be under control so as to stop within the distance at which another vessel can be seen. The H. F. Dimock (C.C.A.1st, 1896) 77 F. 226; The Youngstown (C.C.A.2d, 1930) 40 F.(2d) 420, 421; The Express (D.C.1891) 48 F. 323, affirmed per curiam (C.C.A.2d, 1893) 61 F. 513; The Haven (C.C.A.2d, 1921) 277 F. 957.

■ The Quirigua was proceeding at an excessive rate of speed. Her average speed for twenty-four minutes before the collision was about 8 knots over the ground or 9½ knots through the water. At the time the Southern Cross was sighted the Quirigua was proceeding faster than 5 knots over the ground and 6½ knots through the water. This was an excessive speed. This court, in the case of Tai Ping-Jean, 1935, A.M.C. 219, condemned a collision which occurred under identical weather conditions a few hundred feet away from and two hours before this collision at a speed of 4 knots over the ground and 6 knots through the water.

Both vessels are at fault. A decree may be entered accordingly.

Settle findings and decree on notice.