### THE ROSALEEN.

(Circuit Court of Appeals, Second Circuit. April 7, 1914. On Motion to Recall and Amend Mandate, May 21, 1914.)

#### No. 176.

1. COLLISION (§ 100*)—MOVING AND ANCHORED VESSELS—EXCESSIVE SPEED· IN FOG.

A ferryboat *held* in fault for a collision in a fog with a scow anchored. at a. place in the Hudson river, where she or another had been for two years, for moving at too high speed, so she was unable to stop after .seeing the scow; the scow also *held* in fault for failing to sound her fog bell.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 213–215; Dec. Dig. § 100.*

Collision rules—speed of steamers in fog, see note to The Niagara, 28, C. C. A. 532.]

2. COLLISION (§ 115*)—PERSONS LIABLE—OWNER OR CHARTERER.

A scow had been demised by her owner by a charter to a towing company which kept her or another permanently anchored in the river to· receive ashes from its tugs. She was not equipped for such employment, having no bell and only one man on board. The company provided a bell but no additional men. *Held* that, where she was adjudged partly in fault for a collision with a passing vessel in a fog for failing to sound her bell, the charterer and not the owner was liable for the damages ad-. judged against her.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 244–247; Dec. . Dig. § 115.*]

Appeal from the District Court of the United States for the Eastern District of New York.

This case comes here on appeal from a decree of the District Court, Eastern District of New York, holding libelant's ferry boat Albany solely in fault for a collision between herself and the scow Rosaleen. The Albany alone suffered damage from the collision. The scow was at the time chartered (the charter constituting a demise) to the Moran Towing Company which was brought in on petition by the owner of the scow. Modified.

J. K. Symmers, of New York City, for appellant.

D. R. Englar, of New York City, for the scow.

C. I. Clark, of New York City, for Towing Co.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. [1] The scow lay at anchor, on anchorage ground between 700 and 1,000 feet from the libelant's ferry slips at Guttenberg, West New York. She was there for the purpose of receiving ashes from the tugs of the Moran Company. The Rosaleen had been there for a considerable time, and she or some other scow had been continuously anchored in the same place for two years or more. To the eastward of the scow, at a distance variously estimated at from 300 to 400 feet, lay the United States cruiser Prairie, which had been anchored there for about two days. At 5:40 a. m. October 19, 1910, the ferryboat left the Guttenberg slip for Forty-Second street, New York, she passed outside—to the northward and eastward of the Prairie. On her return trip the tide was flood, and to make a convenient entrance into her slip, its long rack being on the north side, she passed between the two anchored vessels. She then left Guttenberg on her second trip; how she passed them does not clearly appear. She left Forty-Second street on her return trip at 6:34, and proceeded up a little to the west of the center of the river, intending, as the tide was still flood, to pass between them. Up to this time the weather had been clear. According to the narrative of her witnesses when about halfway between Weehawken and Guttenberg she encountered a thick low-lying fog, slowed down, and proceeded cautiously. As the Albany drew near her slip she heard the fog bell of the Prairie, but did not see her, heard no sound from the Rosaleen, and endeavoring to pass between the two found herself too far to the westward, as the Rosaleen was sighted about a length away. The efforts of the master of the Albany to avoid her by starboarding or by stopping and reversing were ineffectual and collision followed.

That there was a fog at the time and place is most clearly established. The master of the scow testified that the fog was very light, that he could see men walking on shore and others walking on the deck of the Prairie, but the time he made these observations was several minutes before collision, as he was going into his cabin for breakfast, with which he was occupied just before collision. The direct testimony of the witnesses from the Albany is fully corroborated. An extra lookout was stationed when halfway between Weehawken and Guttenberg, her bell was sounding; the fog bell at the Guttenberg slips was rung

and heard; the Prairie was sounding her bell, and her log indicates fog beginning at 6 a. m. and growing thicker. No one on the Albany saw the Prairie on this trip.

The District Judge held the Albany in fault for going at too high a speed in a fog, and we are. inclined to the same opinion. Manifestly she was going at such a speed that she could not stop within the distance at which she could sight the Rosaleen. It is well settled by authority that, in such atmospheric conditions as the Albany's testimony indicates prevailed at the time, her speed should be so slow as to avoid collision with another vessel herself obeying the rules. The Rosaleen was undoubtedly in fault for not giving fog signals, and if she had been a new comer on the field of operations, of which the Albany had no notice, we should be inclined to hold her solely in fault for the collision. But her presence was well-known to the Albany; her general location, 300 to 400 somewhat to westward of the Prairie, was also known. When the Albany heard the Prairie's bell twice as she did, she was advised that she was drawing near the other anchored vessel, which for some unknown reason was giving no sound. Such a condition of affairs called for extra precautions and a further reduction of speed until she could make out exactly where the Rosaleen lay. Under these circumstances, the Albany must be held in fault.

[2] The fault of the Rosaleen is also manifest and inexcusable, she should have sounded her fog bell at regular intervals, she did not sound it at all. We cannot say that her fault did not contribute to the collision. Had the Albany heard the Rosaleen's bell ahead to the left at the same time she heard the Prairie's bell ahead to the right, it is not improbable that she might have laid a safe course between the two sounds.

The only remaining question is: Who shall respond for the half damages chargeable against the Rosaleen? The charter was a demise of the vessel; her employment and navigation was wholly within the control of the charterer. Her so-called "master" was little more than a caretaker; he was certainly not her navigator. When the owner turned the vessel over to the charterer, she was not equipped to lie alone at anchor for long periods of time; she had only one man and no bell. She was sufficiently equipped to be towed by a tug which could herself sound signals and maintain lookout and anchor watch, but not for the service to which the charterer put her. The charterer thoroughly understood this, for the first thing it did when it made the Rosaleen a permanently anchored scow was to furnish her with a bell and a small boat in which the man on board could get to the shore. But the bell was not enough without a man to sound it, and no man was provided to stand watch and watch with the owner's man. The latter had to sleep sometimes; he had to go ashore for supplies. On some such excursion ashore a fog might come up which would make it impossible to get back to the scow again for hours. Having put the boat to a use for which she was not fitted, without itself making her fit, we think the charterer is responsible for the natural results of such carelessness.

The decree is modified so as to impose half damages on the charterer with half costs of this appeal to libelant.

Before COXE and ROGERS, Circuit Judges, and HAND, District Judge.

### On Motion to Recall and Amend Mandate.

PER CURIAM. After the claimant brought in the respondent, the case stood precisely as though the libelant had sued both claimant and respondent at the same time. As between libelant and respondent, the court has already decided that each should have half costs, and that decision need not be disturbed. The only question that can arise is regarding the claimant's own costs. It may be that the scow was prima facie responsible for the damage and that the libelant had the right to sue her, but, if so, it was through the fault of the respondent that she was put in this position, and the costs of the ensuing litigation were due to the respondent's fault alone. It makes no difference whether the whole costs are charged against the respondent and the respondent has leave to charge half those costs against the libelant, or whether the claimant recovers half costs from the libelant and half from the respondent. In any case the result is the same. The mandate, therefore, will be amended to read as follows:

That the decree of the said District Court be and the same hereby is modified so that the libelant shall recover of the respondent one-half its damages with interest and one-half its costs in this court and in the District Court; that the respondent may set off one-half its costs in this court and in the District Court, and that the claimant of the scow Rosaleen shall recover from the libelant and from the respondent each one-half its costs in this court and in the District Court.