### THE WATUPPA.

### LYKIARDOUPULO v. STAPLES TRANSP. CO.

(Circuit Court of Appeals, Second Circuit. June 26, 1922.)

No. 63.

1. **Collision** ⊗⇒83—**Tug and anchored steamer both held in fault in view of fog.**
    In a collision in a dense fog between a tug entering on anchorage ground in New York Harbor and an anchored steamer, within or slightly off such ground, both *held* in fault, the steamer for not ringing her fog bell, the tug for proceeding at the rate of 2½ to 3 knots an hour, and so failing to observe the caution required in view of warning, from noise of clipping hammers, of the near presence of some vessel.

⊗⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Collision ⬦⟩125—Proof of loss of earnings as damages held insufficient.**

That a foreign government, which before the collision had requisitioned the injured vessel, was liable for charter hire from the time of requisition, so that, on the theory of interruption of such liability because of unseaworthiness of the vessel caused by the collision, demurrage during the time of repairs could be allowed as an item of damages, though the cargo does not appear to have been in readiness prior to completion of repairs, *held* not shown by the necessary clear proof.

Appeal from the District Court of the United States for the Southern District of New York.

Libel for collision by N. D. Lykiardoupulo, owner of the Steamer Athanasios, against the steam tug Watuppa; the Staples Transportation Company, claimant. From the decree holding both vessels at fault, libelant appeals. Affirmed.

The tug Watuppa collided with the Greek steamer Athanasios, while the latter was lying motionless at anchor in New York Harbor. The owner of the Athanasios libeled the Watuppa to recover damages for the collision, the force of which broke two ⅝-inch steel plates, bent another plate and the stringers, and bent and buckled two frames of the Athanasios. Although the greater number of witnesses testified that the Athanasios was off the Red Hook anchorage ground and in the channel, the trial judge was unable to reach a definite conclusion as to whether the steamer was within or slightly off the anchorage ground. There was a heavy fog, and the weight of testimony showed that the Athanasios was not ringing her fog bell according to law. The ship's sides, however, were being chipped, and the chipping hammers made a loud noise, which was not only heard by various witnesses from a launch close by, but by a disinterested witness named La Porte who was on board the Watuppa and was the master of a barge on the Red Hook Flats that the Watuppa was to pick up. He testified that the captain of the Watuppa told him that he heard the pounding. The lookout on the tug said that he only saw the steamer about 10 feet before the collision. The speed of the Watuppa at the time of the collision was from 2½ to 3 knots per hour. She was on a course crossing the main channel for Sandy Hook steamers, was on or near anchorage ground, and was proceeding to a point on anchorage ground to pick up barges to tow away.

The Athanasios was held at fault for not ringing her fog bell according to law, and the Watuppa at fault for proceeding at an undue rate of speed in a dense fog, and the damages were divided. The only item of damages not allowed by the final decree which has been discussed on this appeal is that of 11 days' demurrage, while the injury to the steamer was being repaired. The evidence offered showing the terms of the charter between the Greek government and the libelant was somewhat vague. The libelant testified that he could not secure the original writing or a copy, but that the Greek government had requisitioned the ship on October 29, and was to pay the ruling freight at the time the ship was loading in New York. The libelant testified that there was no rate of demurrage set forth in the agreement with the Greek government. The Greek government paid the ruling freight rate for the use of the vessel, but did not make any payment for the period of 11 days consumed by repairs of the vessel made necessary by the collision.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (Cletus Keating and Harry D. Thirkield, both of New York City, of counsel), for appellant.

Harrington, Bigham & Englar, of New York City (T. Catesby Jones and Vine H. Smith, both of New York City, of counsel), for appellee.

Before ROGERS, Circuit Judge, and AUGUSTUS N. HAND and KNOX, District Judges.

⬦⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

AUGUSTUS N. HAND, District Judge (after stating the facts as above). [1] The Watuppa was entering upon anchorage ground upon her own business in a dense fog. The noise of the chipping hammers indicated the near presence of some vessel. Under such circumstances she was bound to proceed with the utmost caution. We agree with the court below that such caution was not observed when she proceeded at the rate of 2½ to 3 knots per hour in a fog so thick that the Athanasios only became visible when approximately 10 feet away. It is true that the Athanasios was not ringing her bell properly, and if she had done so the Watuppa would have had warning of the near presence of an anchored vessel. The failure to do this renders the Athanasios liable. But the Watuppa had warning from the noise of the chipping hammers of some object in the harbor, either stationary or moving, and should have navigated accordingly. We are referred to no case which would exempt the Watuppa, in view of the warning she had, from the obligation to navigate slowly and cautiously in a dense fog, merely because the Athanasios neglected to ring her bell. She knew some object was near by, and did not proceed with due caution under such circumstances.

[2] In respect to damages based upon loss of earnings of the vessel while she was undergoing repairs, there must be clear proof that there would have been such earnings, if the collision had not occurred. The testimony establishes that there was no agreement between the parties as to demurrage. The vessel apparently was requisitioned by the Greek government under an agreement to pay the ruling freight rate at the time she was loading in New York, but the written documents as to terms were not produced, and the principal testimony on the subject is the oral testimony of the libelant. The master testified that on the 29th of October the consul notified him orally "that they were going to requisition the ship, and the next day they sent me a letter—and I wrote it in the log book, too." It is significant that there was no definite proof offered to show that the Greek government paid any demurrage to libelant because of failure to begin to load within a reasonable time, though some four weeks elapsed between October 29th and the date of the collision, and the libelant has apparently settled in full with the Greek government. That government was under no obligation to pay hire for the vessel during the period of repair, because she was then in an unseaworthy condition. The Yaye Maru (C. C. A.) 274 Fed. 195. There is no convincing proof that cargo was in readiness and a berth for loading available prior to the completion of the repairs. If the libelant had any definite proof that the Greek government was liable for charter hire from October 29th, and that this liability was interrupted for 11 days by a collision which rendered the vessel unseaworthy, then he should have produced the Greek consul, or some witness who knew the facts, and should not have relied on hearsay testimony and general conclusions to prove the relation of the parties and the ability of the ship to secure cargo.

The decree is affirmed, with costs.