## NEW YORK CENT. R. CO. v. CITY OF NEW YORK.

Circuit Court of Appeals, Second Circuit.
May 2, 1927.

No. 316.

1. Collision ⊂⊃100(1)—Ferryboat, navigating during fog, must exercise reasonable care, with due regard for rights of others.

Although ferryboat may lawfully leave her slip and navigate during a fog, in so doing she is obliged to keep within requirements of reasonable care in navigation, and to have due regard for rights of others navigating on river.

2. Collision ⊂⊃93—Ferryboats are liable for collisions avoidable by exercise of due care and skill in navigation.

While ferryboats are obliged to navigate, having regard for needs of public for rapid transit, they are liable for collision which they could avoid with the exercise of due care and skill in navigation.

3. Collision ⊂⊃100(2)—Ferryboat, proceeding during fog faster than would permit her to stop within distance she could see, held responsible for collision; "negligent navigation."

Ferryboat, navigating in fog at a speed faster than would permit her to stop within distance she could see ahead, held responsible for collision, in that she was guilty of negligent navigation.

4. Collision ⊂⊃81—Barge moored alongside of pier, and not at pier end, held not negligent in not giving fog signals.

Barge lying alongside other vessels at pier during fog, at same position which she had maintained for some hours, held not negligent in failing to give fog signal prior to collision with ferryboat, since barge was not at pier end, and sounding of fog signal would have tendency of misleading moving vessels.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the New York Central Railroad Company, as owner of the steam hoisting barge Weehawken, against the City of New York. Decree of dismissal, and libelant appeals. Reversed.

Bigham, Englar & Jones, of New York City (Leonard J. Matteson, of New York City, of counsel), for appellant.

George P. Nicholson, Corp. Counsel, of New York City (Charles J. Carroll, of Brooklyn, N. Y., and John T. Condon, of New York City, of counsel), for appellee.

Before MANTON and SWAN, Circuit Judges, and CAMPBELL, District Judge.

MANTON, Circuit Judge. At the time of this collision, the appellant's barge Weehawken was lying alongside two other vessels at Pier 33, Brooklyn. This is adjacent to the Buttermilk Channel. The ferryboat Gowanus left her slip at Thirty-Ninth street in a very thick fog, and while navigating out of her course ran into and damaged the Weehawken.

The fog was very dense, and had prevailed for a considerable time previous. The Gowanus made a trip in the fog from Whitehall street to Thirty-Ninth street, and was returning at the time of the collision. Indeed, it was so dense that the ferry racks were not visible from the ferryhouse. The lookouts were at their posts, and fog signals were sounded regularly. The tide at the time was flood. The usual time for making the run from Brooklyn to Whitehall street on a clear day was about 20 minutes. The District Court held that the Gowanus was not at fault in navigating in this dense fog, or in coming into collision, and dismissed the libel.

The captain of the Gowanus testified that he could see the lookout just below him on the saloon deck, but could not see the deckhand stationed on the main deck. He said he could not see 10 or 15 feet ahead. In dismissing the libel, the court below referred to the case of Wright & Cobb Lighterage Co. v. New England Navigation Co. (D. C.) 189 F. 809, affirmed (C. C. A.) 204 F. 762, as authoritative and controlling. In that case we held that a ferryboat was not negligent in navigating in a dense fog, saying: "She seems to have been carefully navigated, and, indeed, on the oral argument, the counsel for the transfer flotilla substantially withdrew his charge of fault on her part."

But it appeared in that case that the ferryboat was attempting to enter her slip without knowledge of the flotilla extending out about 300 feet into the river beyond the ends of the piers. This court held that, under the circumstances, it was the duty of the flotilla, as long as the fog continued, to sound signals giving notice of its presence—other than signals which would indicate it to be in motion—and that the continuous ringing of a bell was such proper signal. The position of the flotilla at the end of the pier was an obstruction to the ferry slip, and made it exceedingly difficult for the ferryboat to avoid it. Indeed, it appears that the tug and the car float were caught in the fog which came up and

were obliged to tie up in a dangerous place. There the ferryboat had no notice or knowledge of. the presence of the floats obstructing the pier. Here the Weehawken had been lying alongside the pier while the ferryboat made trips in clear weather, and her position was known to the captain. He was obliged to navigate having due regard for her position, which she lawfully maintained. [1, 2] While it was lawful for the Gowanus to leave her slip and navigate, in so doing she was obliged to keep within the requirements of reasonable care in navigation, and to have due regard for the rights of others navigating on the river. The Rockaway (C. C.) 25 F. 775. While ferryboats are obliged to navigate, having regard for the needs of the public for rapid transit, they are liable if they could avoid collision by the exercise of due care and skill in navigation. Eastern Dredging Co. v. Winnisimmet (C. C. A.) 162 F. 860; The Chicago (D. C.) 134 F. 1013.

On this record it appears that the Gowanus left Thirty-Ninth street at 7:14, and the collision occurred at 7:39. The run was 2¾ to 3 miles. The collision occurred after the Gowanus had completed about half the distance. Her average speed was about 9 miles per hour. The captain of the Gowanus testified that he had gone ahead, but had stopped his engines just before the collision with the Weehawken. He had telegraphed, ordering the engines full speed astern, only a few seconds before the collision occurred. If the Gowanus had stopped, as claimed, her momentum had not been suspended. The captain testified that the boat had some headway when the lookout yelled: "There is something ahead; go back." The force of the collision and the damage done would indicate excessive speed, considering the fog. The Watuppa (C. C. A.) 283 F. 8; The Bayonne (C. C. A.) 213 F. 216.

[3] The engineer testified, from his log, that prior to the collision the ferryboat was proceeding slowly, and the only alteration in the speed of the engines was the order of full speed astern, which was 10 or 15 seconds before the collision. He testified that just previous to the collision they were backing. The Gowanus was violating the rule providing that a vessel navigating in a fog must go no faster than would permit her to stop within the distance she can see ahead. The Haven (C. C. A.) 277 F. 957; The Manchioneal (C. C. A.) 243 F. 801; The Jersey Central (C. C. A.) 221 F. 625. This rule has been applied to ferryboats, as well as other craft. The Rosaleen (C. C. A.) 214 F.

252. These faults place responsibility for the collision. The Gowanus was guilty of negligent navigation.

[4] Nor do we think the Weehawken was negligent in not giving a signal while at rest alongside the pier. She was not at the pier end, as in the Wright & Cobb Case, which position would require her to give signals in a fog at the approach of another vessel. The Jersey Central (C. C. A.) 221 F. 625. The sounding of fog signals by her would have had the tendency of misleading moving vessels. The P. R. R. No. 5 (C. C. A.) 181 F. 833. Prior to the collision, the Weehawken heard no signals on the ferryboat, indicating that she was approaching near her. There was no requirement to signal.

While Pier 33 runs parallel with Buttermilk Channel, the southerly end of the pier forms the northerly side of the gap which leads to the Atlantic Basin. There was navigable water for this ferryboat extending over 800 feet westerly from Pier 33; the Weehawken was 20 feet wide, and was outside two sand barges, with three boats in the tier, making a combined width of 87 feet. She had been there since 4 p. m. the day before. When she was moored in this position, there were boats alongside and no other place for her to moor. It was the closest position she could find to the pier. The situation alongside this pier was observable to and seen by the captain of the Gowanus on his previous shift, when the weather was clear. No fault is established against the Weehawken, and the responsibility for the damage rests solely on the Gowanus.

Decree reversed, with costs.