## THE YOUNGSTOWN.

### PENNSYLVANIA R. CO. v. ERIE R. CO.

### No. 244.

Circuit Court of Appeals, Second Circuit.
April 7, 1930.

Anthony V. Lynch, Jr., Samuel Park, and Park, Mattison & Lynch, all of New York City, for appellant.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Chauncey I. Clark, and Frederic Conger, both of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

Shortly before sunrise on June 10, 1925, the claimant's ferry, Youngstown, left the

Manhattan shore bound for her New Jersey slip. There was a fog, and because of the travel up and down she had to stop repeatedly, lost her bearings, drifted down with the ebb, and finally collided with the libelant's car float lying at the end of a pier on the New Jersey shore, three piers below her slip. The injured float was the outmost of six, and, as each was about thirty-five feet wide, its outshore side was more than two hundred feet from the pier end. It carried a light at either end, burning at the time, and a bargee who was aboard, but who gave no signal of any kind, either before or after he heard the ferry's fog signals, if he heard them at all. The District Judge held the ferry solely at fault and decreed accordingly.

The fault of the ferry seems to us established beyond question. While she was right in leaving her slip, in spite of the fog (The Orange [D. C.] 46 F. 408), she was of course bound to use caution, once under way, and the fog rules applied as much to her as to any other vessel. New York Central R. R. v. New York, 19 F.(2d) 294 (C. C. A. 2); Eastern Dredging Co. v. Winnisimmet, 162 F. 860 (C. C. A. 1). The injuries which she did to the float preclude the conclusion that she was under proper control; it is idle to urge that she was going only fast enough to keep her steerage-way. The Express, 212 F. 672 (C. C. A. 2); The P. R. R. No. 5, 181 F. 833 (C. C. A. 2); New York Central v. New York, 19 F.(2d) 294 (C. C. A. 2), supra. The appellant offers nothing to relieve it from the presumptive liability arising from collision with a moored vessel.

The fault of the float is not so plain because in the light of the decisions we may not hold that it was unlawful to place even as many as six floats abreast at a pier-end, whether or not this is in fact an unreasonable intrusion upon the fairway. The fog, however, imposed a duty upon the float which did not exist in fair weather. The practice always contracts the navigable waters, but in fair weather she could be seen and avoided. In fog her presence could not be detected and the price of her privilege is notice of her presence. And for this reason we have several times decided that if several vessels are moored abreast at a pier-end, they must make some noise with a horn, a bell, a gong, or the like. In The Kennebec, 108 F. 300, we spoke with some warmth of the practice, but held the vessels only because of their silence. In New York, O. & W. Ry. Co. v. Cornell, 193 F. 380, we held liable a tug which moored to a pier, and let her tow swing in the stream, because she gave no signals. If the tug had been away, it is fair to suppose that the duty would have devolved upon the barges. Judge Thomas held a tug and tow which lay alongside a pier for failing to give signals after hearing the approach of the on-coming vessel. The McCaldin Brothers [D. C.] 117 F. 779. It is very difficult from the statement of facts in The P. R. R. No. 5, 181 F. 833 (C. C. A. 2), to understand where the injured vessel was lying. We confess that she seems to us to have been outside several others, but in Wright & Cobb Lighterage Co. v. New England Nav. Co., 204 F. 762, and The Jersey Central, 221 F. 625, we said that she was alone, and put the decision on that ground. In Wright & Cobb Lighterage Co. v. New England Nav. Co., we found that the moored vessels had in fact rung bells, and excused them only for that reason, reaffirming the duty imposed in The Kennebec (C. C. A.) 108 F. 300. In The Jersey Central, 221 F. 625, we repeated this ruling and found the moored vessel at fault for failing to give a signal after hearing the signals of the on-coming vessel. Whether we intended to limit the duty to cases where such signals were in fact heard does not definitely appear, but nothing of the sort was suggested either in The Kennebec, or in Wright & Cobb Lighterage Co. v. New England Nav. Co. The appellee relies upon our last decision (New York Central R. R. v. City of New York, 19 F.(2d) 294), in which we excused the moored vessels, which neither rang a bell nor gave any other signal, though made fast three abreast along the side of Pier Thirty-Three, which forms the outer side of the Atlantic Basin and runs parallel with the channel. There, however, the ferry upon her last previous trip had seen the boats while the weather was clear, and we thought that this was enough. We did indeed say that the moored vessels were not at fault for failing to signal, but this is to be read in the light of the ferry's earlier notice. It is not therefore necessary to rest the case upon the perhaps questionable distinction between mooring at a pier-end, and along the side of Pier Thirty-Three. At any rate, we expressly recognized Wright & Cobb Lighterage Co. v. New England Nav. Co., which still states the law.

The duty is not in our judgment conditional upon the moored vessel's hearing the signals of the other which is approaching. Such is not the case when a vessel is anchored in a fog, and we can see no reason for a difference. The reason of the rule is that, in

such a position, vessels, to be excused at all, must make themselves known, either by sight or sound. It is difficult, especially in so crowded a harbor as this, to be sure of the approach of a boat from its signals, or at times even to hear them at all. Sound in a fog is full of curious caprices. The only safe course is for each to give its appropriate signals, the moving vessel by her whistle; the moored, by a bell, or the like. If the float did not in fact hear the ferry, this case is a good instance of the necessity. While apparently the duty does not exist in the case of only one vessel so moored—a distinction which to the court as now constituted seems open to some question—we deem it well settled law in this harbor that several moored at a pier-end must signal, regardless of whether they hear a boat approach.

The fact that these floats did not extend beyond the bulkhead line is immaterial; until occupied by piers, waters within that line are as open to navigation as any others. It would be absurd to allow them to be encumbered by water craft, merely because piers may be built there under proper regulation.

Decree modified by holding both vessels at fault, and affirmed as modified.