846

## THE P. R. R. NO. 457.
## THE RED BANK.

District Court, S. D. New York.
July 7, 1938.

Burlingham, Veeder, Clark & Hupper, of New York City (Chauncey I. Clark and Edward L. Smith, both of New York City, of counsel), for libellant.

Macklin, Brown, Lenahan & Speer, of New York City (Leo F. Hanan, of New York City, of counsel), for claimant.

COXE, District Judge.

This is a libel by the Pennsylvania Railroad Company, owner of the barge "P.R.R. No. 457", against the ferryboat "Red Bank", belonging to the Central Railroad of New Jersey, for damages for injuries sustained by the barge in a collision with the ferryboat at the end of Pier 8, North River, at 5:56 P. M. on Jan. 8, 1937. The collision took place in a dense fog while the barge was moored at the end of the pier. The tide at the time was flood.

The No. 457 is a covered barge, 100 feet long and 30 feet wide; she was lying loaded at Pier 10 in the early morning of Jan. 8th, and was shifted at about 9 A. M. on that day to the end of Pier 8. In the afternoon the weather became misty, and at about 4 P. M. turned into fog. The barge was headed upstream and overlapped the pier at both ends. The bargee testified that at 5:15 P. M. he placed on the offshore side of the barge two white lanterns, one forward and one aft, and that both were lighted at the time of the collision. He also said that after placing the lanterns he went into his cabin and remained there until the collision occurred; that the fog became dense after 5:30 P. M., with a visibility of not more than 15 or 20 feet; and that the Red Bank struck the barge about amidships, sinking her almost immediately. There was no horn or bell on board the barge, and it was conceded that no fog signals of any kind were given.

The Red Bank left Jersey City at 5:46 P. M. on a regular run to Liberty Street. It was then foggy, and the fog became dense in the middle of the river. There were two deckhands as lookouts on the lower deck just inside the gate, one on the port and the other on the starboard side. At first, the vessel ran at half speed, then at slow speed, and when the middle of the river was reached, the engines were stopped to permit a tug and float to pass. The captain testified that from there the vessel worked slowly towards the New York shore, heading about for Pier 8 to allow the flood tide to bring her to her slip above Pier 11. When near the New York shore, alarm signals were heard forward, and the engines were then placed full astern. Immediately afterwards, the No. 457 loomed through the fog, but the headway of the Red Bank could not be checked in time, and the starboard quarter struck the barge almost amidships. The captain and the two deckhands testified that they did not see any lights on the barge prior to the collision.

I think the fault of the Red Bank is clear. According to the testimony of her own witnesses, the visibility was not more than 30 feet, and yet her speed was such that she could not stop within that distance. Indeed, the damage to the barge indicates that the speed was greater than her witnesses were willing to admit. The sight rule is applicable. The Rosaleen, 2 Cir., 214 F. 252; New York Central R. Co. v. City

of New York, 2 Cir., 19 F.2d 294. The Youngstown, 2 Cir., 40 F.2d 420; and the usual presumption of fault attaching to a collision with a moored vessel has not been rebutted. The Gulf of Mexico, 2 Cir., 281 F. 77; The Providence, 2 Cir., 67 F.2d 865.

The case for the No. 457 is more troublesome. It is first said that she was not showing proper lights. The bargee was, however, positive that he placed two lanterns on the offshore side of the barge, and that they were lighted at the time of the collision. This testimony was corroborated by two disinterested witnesses. In the face of this showing, I do not attach much importance to the negative testimony of the witnesses for the Red Bank that the lights were not observed. The Fin Mac-Cool, 2 Cir., 147 F. 123. I accordingly find as a fact that there were two lights on the No. 457 at the time of the collision.

It is next insisted that the No. 457 was at fault for not sounding fog signals of some kind to indicate her presence at the end of the pier. There is clearly a duty to signal "with a horn, a bell, a gong, or the like" where several vessels are moored abreast at a pier end. The Youngstown, 2 Cir., 40 F.2d 420. But it is said that no such duty exists in the case of only one vessel so moored. The point was considered in the opinion in the Youngstown Case, and after a careful review of the authorities, it was stated that although "apparently" there is no duty to signal where but one vessel is moored at the pier end, the distinction "seems open to some question". It is unnecessary again to review these authorities; they appear rather to have assumed that no such duty existed in the case of a single vessel than to have actually decided the point. I think, therefore, that the question is still open, and I cannot see any sound reason for the distinction. Certainly the obstruction to navigation is not so much dependent on the number of vessels moored at the pier end as it is on the extent of the projection into the fairway. The projection here was 30 ft., but the neighborhood was congested, and the collision took place at a time when considerable traffic might fairly be expected near the pier ends. The bargee testified that he could only see 15 or 20 feet in the fog; yet he went to his cabin after placing his lights, and did not appear again until after the collision. I think that ordinary prudence required more than this; the same kind of fog signals required of several vessels moored at a pier end.

The decision in the Buffalo-Ossabaw, 1933 A.M.C. 1506, affirmed without opinion in Clyde-Mallory Lines v. Delaware, L. & W. R. Co., 2 Cir., 75 F.2d 1008, is not to the contrary. In that case, the Ossabaw extended into the channel from her berth at Hoboken; she had been there in plain sight for three weeks prior to the collision, and there was every reason to believe that the colliding vessel knew of her presence. I think, therefore, that the case is plainly distinguishable.

I accordingly hold both vessels at fault, and direct a decree for the libellant for half damages, but without costs.