### PENNSYLVANIA R. CO. v. CENTRAL R. R. OF NEW JERSEY.

No. 254.

Circuit Court of Appeals, Second Circuit.
April 17, 1939.

Burlingham, Veeder, Clark & Hupper, Edward L. Smith, and Chauncey I. Clark, all of New York City, for appellant.

Macklin, Brown, Lenahan & Speer, of New York City (Leo F. Hanan, of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The libellant's barge, thirty feet wide, was lying moored at the end of Pier No. 8 on the New York shore of the Hudson River, after dark, in an exceedingly dense fog. The claimant's ferry was making her regular trip from Jersey City to her Liberty Street slip, three piers above where the barge lay. The tide was flood;

there was no wind. The ferry got lost and struck the barge a heavy enough blow to sink her where she lay. The ferry was blowing regulation fog signals, but, although a bargee was aboard the barge, he did not beat a pan, or swing a rattle, or make his presence known in any other way. The district judge held both vessels at fault; the ferry for going too fast; the barge, for failing to sound any warning.

We can see no excuse for the ferry; so far as appears, she would have had no difficulty in keeping steerage-way with much less speed than she had when she struck the barge. It is true that in Wright & Cobb Lighterage Co. v. New England Navigation Company, D.C., 189 F. 809, affirmed 2 Cir., 204 F. 762, a ferry was excused for colliding with a flotilla which extended out 100 feet from the pier-end. We cannot altogether reconcile that holding with the well-settled doctrine that in a fog a vessel, not compelled to go any faster in order to keep her steerage-way, must be able to stop after she sees another vessel. That may be a counsel of perfection in so dense a fog as this; but the ferry must have exceeded any speed measurably comparable with that required of her. At any rate, the rule applies as well to ferries as to other vessels, and the decision must be considered overruled in so far as it holds otherwise. The Rosaleen, 2 Cir., 214 F. 252; New York Central R. Co. v. New York, 2 Cir., 19 F.2d 294; The Youngstown, 2 Cir., 40 F.2d 420.

The only important question is of the barge's fault. We have repeatedly held that when two or more fog-bound vessels are moored abreast outside a pier-end, they must sound some warning. This neither the statute, nor the rules, require: it is judge-made law, and possibly it is ill-made law. But at least there is this to be said for it; that the position of those of the vessels which are moored outside that which is next the pier-end, is for all practical purposes the same as though they were anchored in the channel. Certainly when six, seven, or even ten, as is sometimes the case, are so moored, the analogy is very close indeed. It is of course true that such vessels are not anchored, and for that reason Art. 15(a) (d), Inland Rules, 33 U.S. C.A. § 191(a) (d), does not apply to them; but there is surely a good reason to require some warning from them; and we are not disposed to abate the requirement in such situations. The notion that single vessels need give no warning seems to have grown out of a misunderstanding of the P.R.R. No. 5, 2 Cir., 181 F. 833, in which a moored vessel was excused although, as we read the statement of facts, there were several, moored abreast. In order to reconcile that decision with the general doctrine, we have twice declared that only one vessel was concerned, thus by implication holding that in that case no duty exists. Wright & Cobb Lighterage Co. v. New England Navigation Co., supra (204 F. 762); The Jersey Central, 2 Cir., 221 F. 625. In The Youngstown, supra (40 F.2d 420) we accepted that assumption as law, though the distinction seemed to us of somewhat doubtful propriety. Perhaps it is: the truth is that we are in no position to pass on such a question at all. We have no such familiarity with the conflicting interests of harbor craft as enables us to weigh the burdens against the advantages of such a duty. It might make for safety, or it might merely create confusion: if it made for safety, the advantage might be too slight to justify the trouble and expense. Single vessels, moored to a pier-end, intrude very little into the fairway, and probably no moving boat should calculate so closely as to be surprised by their presence. The steamboat inspectors would probably be best qualified to decide, if their jurisdiction extended so far. At any rate we are confident that we ought not to intervene, and until some competent authority does so, we shall leave the rule as it stands. After all, it is not a bad piepowder compromise; so far as it goes, there is something to be said for it; nobody competent to pass upon it has said that it should extend further. We hold, therefore, that a single vessel moored to a pier-end need not sound warnings.

Decree modified: libellant to recover full damages.