## THE DALY NO. 55.

## DALY v. CITY OF NEW YORK et al.

### No. A-16303.

District Court, E. D. New York.

Nov. 13, 1941.

Mahar & Mason, of New York City (Frank C. Mason, of New York City, of counsel), for libellant.

William C. Chanler, Corp. Counsel, of New York City (George Seagrave Frank-

lin and Martin Faust, both of New York City, of counsel), for respondent City of New York.

Macklin, Brown, Lenahan & Speer, of New York City (Paul Speer, of New York City, of counsel), for respondent Reading Co.

GALSTON, District Judge.

On the night of April 23, 1941 the barges Daly No. 55 and Farragut were taken in tow by the Reading tug Patience at Newtown Creek, bound for Port Reading. Both barges were light. They were taken to the pier at the foot of Java Street where two other boats, the Blue Thistle and the Fisher Island, were tied up to the dock. The Blue Thistle was nearest the pier end. The Farragut was placed alongside of the Blue Thistle; and the Daly No. 55 alongside of the Farragut. Thus there were three boats in that tier. The tug Patience then left the flotilla and brought back the Standard, which was placed in the tow astern of the Farragut. The captain of the Patience again left the flotilla to pick up another boat but instructed the bargeman on the Daly No. 55 to drop back alongside the Standard. This maneuver was carried out so that the flotilla then consisted of five boats, two in the head tier and three in the second tier. The time was about 11 o'clock at night; the weather, a slight drizzle.

After the bargeman on the Daly had gone to his cabin to change his clothes, he saw through his windows on the port side of the cabin what proved to be the fire boat Abram S. Hewitt approaching, showing a port light. A collision occurred when the bow of the fire boat hit the Daly about twenty-five or thirty feet from the port stern corner. The blow was not a heavy one, for the fire boat backed as it struck the Daly.

The testimony of Larsen, the bargeman, as well as that of others on the flotilla convinces me that all of the boats had lights up. Larsen explained that in Newtown Creek, before the Patience arrived, he had a light on his stern pole, and after the Patience took him in tow he put another light on the bow. The light at the stern was fourteen feet above the deck of the barge and the light at the bow was on a block, some short distance above the combing or rail which itself was seven or eight inches high. These lights were up on the trip to Java Street and remained up.

The witnesses for the Hewitt all testified that they saw no lights on any of the boats. Just before the collision the boat had responded to a station call in New York City on 28th Street near First Avenue and was returning to its berth about four blocks south of the Java Street pier at the foot of Noble Street, Greenpoint. On the way back to its engine house pier the fire boat came down off the Brooklyn shore about 150 feet from the pier ends. Those on the fire boat first saw the Daly when they were about five hundred feet away. Donnelly, a captain attached to the Fire Department who was on the Hewitt, testified that at that time he expected the Hewitt to veer off from the cluster of boats. He admitted that he did see a light on the mast of the Daly when the Hewitt was backing up, and at a distance of about seventy-five or a hundred feet away. Asked whether he could see the lights on the New York shore he replied that he had not looked.

Radigan, the pilot of the Hewitt, also said that he saw the Daly when about five hundred feet away. He was proceeding then at a speed of about eleven and a half knots with an ebb tide under foot. He then immediately signaled for full speed astern but he did not lose headway before the collision. He saw no lights on the barge. He said the lights on the Manhattan shore were not visible.

Goldman was stationed as lookout on the Hewitt on the night of the collision. He first saw the Daly when they were a few hundred feet away and saw no lights on any of the barges.

Larsen of the Daly, and McCormick, the captain of the Patience, were the most convincing witnesses in the case. McCormick testified that all lights were up and showing on the barges as he left Java Street to pick up the Wilson, and I accept their testimony that the lights were up as against the negative testimony of those on the Hewitt. Moreover, Dockwell and Moran, deck hands on the Patience, corroborated Larsen and McCormick. Beckett, who was on the Fisher Island as captain, also said all of the barges had lights on their masts.

But the City of New York also contends that the flotilla was so far off the pier and as to obstruct navigation. But the Blue Thistle was only four or five feet from the pier end, and the distance from the pier, measured on a line at right angles to the projected line of the pier, to the port stern

corner of the Daly, which was farthest out in the river, was but a hundred and twenty-five feet.

These facts do not bring the Reading tug within the condemnation of The William Guinan Howard, 2 Cir., 252 F. 85, for there there were sixty or seventy boats tied up to the end of the pier. Rather, as was said in The Youngstown, 2 Cir., 40 F. 2d 420, 421, "The fault of the float is not so plain because in the light of the decisions we may not hold that it was unlawful to place even as many as six floats abreast at a pier-end, whether or not this is in fact an unreasonable intrusion upon the fairway." So too in The John F. Bresnahan. D.C., 58 F.2d 678, it was said relying on The Youngstown decision, that it was not unlawful or improper to tie up as many as twenty-two barges in four boat tiers at the end of the pier.

As I said at the conclusion of the trial, so far as the issue of lights is concerned, the credible and persuasive testimony of the witnesses leads me to believe that there were lights on this flotilla and that they should have been seen by the lookout and the pilot on the Hewitt.

It would appear, therefore, that the Hewitt was solely at fault and accordingly the libellant may have a decree against the City of New York. The libel against the Reading Company will be dismissed.