## THE ANNAPOLIS.

## THE WASHINGTON SQUARE.

## P. DOUGHERTY CO. v. CITY OF NEW YORK.

### No. 16368.

District Court, E. D. New York.

April 10, 1942.

Foley & Martin, of New York City, (Christopher E. Heckman, of New York City, of counsel), for libellant.

William C. Chanler, Corp. Counsel, of New York City, (George S. Franklin and Martin Faust, both of New York City, of counsel), for City of New York.

GALSTON, District Judge.

It is claimed that the Annapolis while lying at anchorage at Red Hook Flats with regulation anchorage lights properly set, and ringing its regulation fog bell, was struck by the ferryboat Washington Square, bound from the ferry slip on the Brooklyn shore and headed for the Staten Island ferry slip at St. George. The contention of the respondent is that the Annapolis was not lighted and sounded no fog nor other signals.

The Annapolis had arrived at Red Hook Flats on March 22, 1941, and anchored about 1,800 feet inside Buoy No. 24. It cast one anchor on the starboard side. Four other barges, among them the Pensacola, were also at anchor on the Flats at the time of the collision. The accident happened on March 25, 1941, at about 12:35

A. M. On board at the time were the master, his wife, his son and a vagrant or missing deckhand who had been hired that afternoon. The captain's version is that at about midnight the weather became foggy. He heard the siren sounded at 69th Street on the Brooklyn shore and he proceeded to ring the fog bell every six seconds or so, and was on the lookout for ferry boat passage. The barge had lights suspended from bow and stern masts.

The only proof concerning the sounding of the fog signals is the testimony of the captain, his wife and his son. But the captain and deckhands of the ferryboat testified that they heard no signals from the Annapolis. In the light of the contradiction consideration must be given to the testimony of White, a deckhand on the barge Pensacola, who must be assumed to be disinterested. Moreover, the testimony of Foster, given before the local Inspectors, tends to impair his credibility. If according to him visibility was sufficient at the time to enable him to see shore lights on either hand, the statement that he sounded fog signals every six seconds is not convincing. And, of course, his wife and his son must be deemed to be interested witnesses.

On the other hand, the Washington Square is not without fault, for she left the Brooklyn ferry slip at about 12:18 A. M. and according to her master and crew proceeded at slow speed down the channel. They heard fog signals which they placed at Robin's Reef and at some position down in Bay Ridge, south of Buoy No. 24. The weather had turned very foggy and the speed of the engines was three miles per hour. The master had no report from the lookout until immediately before the collision, at which time he gave his stop and full speed astern signal. The collision took place four or five seconds thereafter. The respondent's witnesses are in agreement in fixing visibility at from forty to fifty feet. It therefore appears that they were proceeding at a speed which did not enable them to kill headway within the limit of visibility. See New York Central R. R. Co. v. City of New York, 2 Cir., 19 F.2d 294; The Youngstown, 2 Cir., 40 F.2d 420.

Moreover, the master of the Washington Square knew that it was usual for barges to moor in the Red Hook anchorage ground, and in the weather conditions prevailing that night, as admitted by himself

and his crew, extra caution was called for. Then too, assuming that they heard no fog signals sounded from the Annapolis, they should have heard the fog signal sounded by White on the Pensacola, which was moored in the immediate area of the Annapolis.

Thus both vessels were at fault. The libellant may have a decree for half damages.

Findings of fact and conclusions of law in conformity with the foregoing opinion will be filed concurrently with this opinion.