## THE CLIFFORD PERIN.

### WILLIAMS v. PITNEY et al.

#### No. 17459.

District Court, E. D. New York.

June 26, 1946.

Mahar & Mason, of New York City (Frank C. Mason, of New York City, of counsel), for libellant.

Macklin, Brown, Lenahan & Speer, of New York City (Gerald J. McKernan, of New York City, of counsel), for respondents.

GALSTON, District Judge.

As a result of an extremely thick fog which the lighter Clifford Perin encountered on the morning of March 20, 1945, on rounding the Battery from the East River and proceeding northerly in the Hudson River, she was compelled to tie up alongside a barge moored at the end of Pier 3, North River. While she was moored against the barge with bow and stern lines, the ferryboat Boundbrook, which had left Jersey City at about 7:05 A. M. bound for the Cortlandt Street ferry slip, collided with and damaged the port side of the Clifford Perin.

Accordingly the trial developed sharp issues of fact. The master and the deckhand

of the Perin testified that the vessel carried lights, and that fog bells were sounded at frequent intervals. On arriving off the end of Pier 3, the captain said he could not see whether it was safe to proceed into the slip. In order to make an observation he tied up to a barge which was lying at the end of the slip, climbed over the barge, and then looked down the slip. It was only then that he ascertained that it was safe for the lighter to proceed into the slip. As he hurried back to his vessel he was met by a deckhand with the statement that a ferryboat had collided with the lighter.

The immediate question then is whether a fog bell had been sounded by the Perin. The fog bell was located on the mast of the lighter and was operated, so said the deckhand, at frequent intervals by him as the vessel approached the pier end. This is contested by the ferryboat crew. I am inclined to and do accept the testimony of the captain of the Perin and his deckhand on this point of contradiction. It may well be that during the time that Dreyer, the mate, was heaving lines to the barge in order to tie up against the side of the barge, no fog bells were rung. What that interval of time was the record fails to disclose, and whether it contributed to the accident was not proved. In passing it may be noted that Dreyer was not too accurate in his estimates of time. Affirmative testimony on a question of this sort must be accepted over the negative testimony of the ferrymen. Particularly is this true in circumstances such as prevailed on the night in question, for apparently there were many fog and whistle signals given in that prevailing fog. I cannot, therefore, find that during the interval of tying up there had been a violation of Inland Rules, Article 15, subdivision 2(d), 33 U.S.C.A. § 191, subd. 2(d), which provides: "A vessel when at anchor shall, at intervals, of not more than one minute, ring the bell rapidly for about five seconds."

The Boundbook headed from Jersey City toward Liberty Street, and on nearing Liberty Street her master heard backing signals of a vessel in the vicinity of the ferry racks. There was a strong ebb tide prevailing which tended to set, so the master of the ferryboat said, the ferryboat against the

docks. In the circumstances he properly enough backed in order to get away from the pier heads, and thus he was enabled to escape the backing signals which he said he heard at Liberty Street. However, the Boundbook must be charged with fault in that in proceeding a distance sternward of about fifteen hundred feet, there was no look-out at the stern. This may well have been a reason why Nauch was not informed of the presence of the Perin. There were many signals sounded in the river at the time, and there was a heavy duty resting on the look-outs of the ferry to note and report such signals. The direction of sound in a fog is especially difficult to determine. Youngstown, 2 Cir., 40 F.2d 420, 1930 A.M.C. 942.

The ferryboat captain admitted that he could have maneuvered his vessel further out into the stream, not only at Pier 8, which is north of Pier 3, but also at Pier 3. Instead of that he allowed himself to be in a position where the tide did bring him up against the Perin.

The libellant may have a decree.

With the filing of this opinion appropriate findings of fact and conclusions of law will also be filed.