Petition of WILLS LINES, Inc., for ex-
emption from, or limitation of, liability,
Petitioner-Appellant-Cross-Appellee,

Tankport Terminals, Inc., Claimant-Appel-
lee-Cross-Appellant.

No. 101, Docket 24745.

United States Court of Appeals
Second Circuit.

Argued Nov. 21, 1957.

Decided Jan. 8, 1958.

Harry D. Graham, New York City, for petitioner-appellant-cross-appellee.

Max Taylor, New York City (Krisel, Beck & Taylor, New York City, on the brief), for claimant-appellee-cross-appellant.

Before HAND, HINCKS and LUMBARD, Circuit Judges.

HINCKS, Circuit Judge.

This case presents for our consideration cross-appeals from an interlocutory order in admiralty entered in 1955 by Judge Ryan as well as an appeal by petitioner, Wills Lines, Inc., from an interlocutory decree on the merits entered by Judge Palmieri. This litigation has arisen out of limitation of liability proceedings commenced by the petitioner.

The claimant, Tankport Terminals, Inc., appeals from so much of Judge Ryan's order as denied it a decree *pro confesso*. Petitioner appeals from so much of Judge Ryan's order as refused petitioner a limitation of liability. Petitioner also appeals from the decree of Judge Palmieri which (1) found petitioner solely liable for the damage suffered by claimant; (2) ordered a reference to ascertain claimant's damages; (3) awarded claimant interest for the period of approximately two years, throughout which an appeal from Judge Ryan's order, which had been instituted by the claimant, had been pending. See In re Wills Lines, 2 Cir., 227 F.2d 509, certiorari denied and leave to file petition for mandamus denied on April 30, 1956, 351 U.S. 917, 76 S.Ct. 709, 100 L. Ed. 1450.

The S.S. Mayfair was a ferry owned by petitioner and used to transport sightseers between the Battery and the Statue of Liberty on Bedloe's Island. On January 15, 1953, the Mayfair was enveloped by fog as it prepared to leave Bedloe's Island on its normal 3:30 p.m. trip. The fog remained dense until shortly before 8:00 p.m., when the wind shifted and visibility increased. The captain of the Mayfair immediately set out for the Battery, carrying 61 passengers who had been stranded on the Island. The ship had just commenced to gain headway and was 150 feet from its starting point when the fog suddenly again shut in and visibility was reduced to zero. Lookouts were posted and the Mayfair's fog whistle was sounded at one minute intervals in conformance with proper procedure.

Approximately ten minutes later the Mayfair collided with the claimant's dock coming upon it with considerable force bow on, at right angles. The dock was a narrow structure, resembling a trestle, running approximately one mile from the Jersey shore into New York Harbor to a point about 1,000 feet southwest of Bedloe's Island. No part of it jutted out into the navigable channel: for 750 feet it ran parallel to, and formed the boundary of, the so-

called northwest channel. It had no audible signal devices. It is agreed that its three red navigation lights were not visible through the fog. Since the dock was used as a fueling station for ships there were floodlights on the dock for use in night loading. At no time before the incident were these lights turned on.

The normal courses of the Mayfair on a return trip were southwest in Bedloe's Island channel approximately 500 feet, thence southeast in the so-called northwest channel and parallel to the claimant's dock and beyond to the main channel of New York Harbor, and thence in the main channel northeast to the Battery. Two buoys marked the intersection of the Bedloe's channel and the northwest channel but neither offered any aid to navigation in fog.

■ On March 31, 1953, petitioner filed an *ex parte* petition for limitation of liability. The petition was granted and an order was filed pursuant to which a stipulation and *ad interim* bond for $15,000 in the usual form were filed. An order was also entered which restrained the commencement of other suits.

The claimant disputed the Mayfair's value and a reference was ordered. The Commissioner found the Mayfair's value to be $30,000. Both parties filed exceptions but the Commissioner's report was confirmed. The claimant then moved for an order requiring petitioner to increase its *ad interim* stipulation. This order was issued but petitioner refused to comply. The claimant then moved before Judge Ryan for a decree *pro confesso*. Judge Ryan ruled that the default was not "so wilful" as to warrant a decree *pro confesso*. Instead, he granted claimant the right to prosecute its claim by libel in a new action or in the pending limitation proceeding. Also, Judge Ryan ordered that petitioner be denied a limitation of liability and that the restraining order be vacated.

Petitioner's explanation for not meeting the increased stipulation was that petitioner was unable to raise any further funds on the Mayfair. But that certainly does not indicate that the ship was worth no more than $15,000. We hold that Judge Ryan's order, in so far as it denied petitioner limited liability, was proper: petitioner failed to abide by an admiralty procedure it had chosen. See Rules 51 and 52 of the Rules of Admiralty Practice, 28 U.S.C.A. In view of the conflicting evidence presented to the Commissioner, we find nothing to warrant reversal of the $30,000 valuation.

■ The claimant contends that we shou'd reverse Judge Ryan's refusal to grant claimant a decree *pro confesso* and should order such a decree. This would make it unnecessary for us to consider the claim on its merits. As to the petition for a decree *pro confesso* we think it clear that an admiralty court has the power to enter such a decree under the present circumstances. The Greyhound, 2 Cir., 68 F.2d 832; The Fred M. Lawrence, D.C.E.D.N.Y., 88 F. 910, affirmed 2 Cir., 94 F. 1017; D.C.S.D.N.Y. The Stella R, 1 F.Supp. 998. But even so we are reluctant to say that Judge Ryan's refusal to grant the decree *pro confesso* was an abuse of discretion and a definitive disposition of that question is unnecessary because we are satisfied that on the merits the claimant is entitled to prevail as we shall now proceed to show.

■ At the hearing before Judge Palmieri most of the evidence related to what happened during the 10 or 15 minute interval between the time the fog returned and the Mayfair's collision with the claimant's dock. The petitioner contended that the Mayfair had turned off its engines and had drifted into the dock. It asserted that claimant was liable for not having answered the Mayfair's fog signals and also because it failed to turn on its floodlights. The claimant introduced evidence showing that the current was running in a northeasterly direction—from the dock to-

ward Bedloe's Island. The current and the physical incidents of the collision support the finding that the Mayfair did not drift into the dock.

Judge Palmieri found that the Mayfair was under some power at the time of the impact and under the circumstances was at fault on that account. He noted that even if the facts were otherwise and the collision were attributable to drift, the Mayfair was at fault for failure to ascertain and counteract the drift by lead line and anchor. The evidence was such that Judge Palmieri's findings were not clearly erroneous. Fed.Rules Civ. Proc. Rule 52(a), 28 U.S.C.A. And the conclusion of negligence based upon the findings was right. This case is quite similar to Pennsylvania R. Co. v. Central R. R. of New Jersey, 2 Cir., 103 F.2d 428, certiorari denied 308 U.S. 591, 60 S.Ct. 121, 84 L.Ed. 495, where this court held that a ferry moving in fog was solely liable for hitting a stationary barge anchored at the end of a pier and, also, that the barge had no duty of returning audible signals to the ferry.

Petitioner relies essentially upon Erie & Western Transp. Co. v. City of Chicago, 7 Cir., 178 F. 42. However, that case is distinguishable in two important respects. There, the dock projected directly into the navigable channel: in our case claimant's dock is merely a boundary of the channel and at no point juts into the channel. Secondly, in the Erie case an audible fog signal had previously been mounted on the dock but the bell had been removed from its moorings prior to the night of the collision. In the instant case claimant's dock, as the Mayfair's master undoubtedly knew, has never been supplied with audible signals, the silence of which might have misled the master. And we know of no rule of law that the claimant was under a duty to keep its dock illuminated by its loading lights. The petitioner's contention that claimant's dock constituted a menace to navigation is utterly lacking in support in the record.

Although the issue of damages in this case does not appear to be overly complex, we cannot say that the court below abused its discretion in ordering a reference of the issue especially in view of the recognized admiralty practice. It is significant that the Admiralty Rules contain no counterpart of F.R.C.P. 53(b). Since the interlocutory decree contains no provision dealing with questions relating to the measure or the amount of damages, such questions are not reviewable at this stage.

The petitioner further urges that it should not pay interest for the period covered by the pendency of claimant's unsuccessful appeal from Judge Ryan's order. This contention we sustain. Although the award of interest is generally within the discretion of the trial court, O'Donnell Transp. Co. v. City of New York, 2 Cir., 215 F.2d 92, a long delay in pressing for trial may affect that discretion. The Wright, 2 Cir., 109 F.2d 699. Here, the claimant sought to appeal in this court from an order which was plainly unappealable. 2 Cir., 227 F.2d 509. It also sought, but to no avail, certiorari and mandamus in the Supreme Court. 351 U.S. 917, 76 S.Ct. 709, 100 L.Ed. 1450. The cross-appeals taken by the petitioner were plainly protective; and since, if the claimant had prevailed on its appeal, there would have been no trial, the petitioner cannot justly be charged with dilatory conduct in failing, during the pendency of the appeal, to press for trial below. Under these circumstances we hold that the trial court should not have allowed interest for the period from January 25, 1955, when the appeal was filed, until April 30, 1956, when the Supreme Court refused to hear the case. Since the order appealed from provided for interest and the petitioner, on trial, admitted that the collision resulted in "some damage," we have jurisdiction under 28 U.S.C.A. § 1292(3) to make this ruling at this stage.

Affirmed, except as modified with respect to the allowable interest.